JAMES HILL v. T. L. GRIGSBY, and J. W. SMITTLE.

ATTACHMENT.—The vendor of real estate cannot take out an attachment for unpaid purchase money, if he can enforce a lien for such purchase money. It matters not whether such lien is one which Courts of equity will enforce in favor of a vendor, or whether it is one created by contract.

LIEN OF VENDOR.—The vendor of real estate has a lien on the same for the unpaid purchase money, and such lien attaches to the land equally whether it has been conveyed to the vendee or is only contracted to be conveyed.

WHEN ATTACHMENT CANNOT ISSUE.—An attachment cannot issue when the plaintiff has a lien to secure his debt, and it matters not whether the lien is one recognized by Courts of equity or is one of statutory origin and resting in contract.

IDEM.—If the plaintiff has a lien to secure his debt on property out of this State, an attachment cannot issue.

LAWS OF ANOTHER STATE.—In the absence of proof on the subject, the presumption is that the laws of another State are the same as those of this State.

APPEAL from the District Court, Seventh Judicial District, County of Napa.

The plaintiff appealed from an order discharging the attachment.

The other facts are stated in the opinion of the Court.

*Rayle & Pendegast*, for Appellant.

The mortgage, lien, or pledge mentioned in section one hundred and twenty of the Practice Act, the existence of which permits the issuance of an attachment, is a legal mortgage—a conveyance of lands by the debtor as a security for the debt. It is a solecism to say that plaintiff has a lien on the property and at the same time is invested with the legal title. When the statute says "mortgage" it means a mortgage founded on contract. In this case there was not even an equitable "mortgage." Bouvier says: "An equitable mortgage of land is where the mortgagor does not convey regularly the land, but does some act by which he manifests his determination to bind the same for the security of a debt. An agreement in writing to transfer an estate as a security for the payment of a sum of money borrowed, or even a deposit of title deeds and a verbal agreement will have the same effect of creating an equitable mortgage." (2 Bouvier's Law Dic. 190; 1 Rawle, 328; 3 Wheaton, 284; 1 Cox, 211.) The bond in question contains none of the elements of an equitable mortgage. The case of *Sparks* v. *Hess*, 15 Cal. 188, is not in point, for in that case there was a written agreement signed by the respective parties.' Here the bond was signed by appellant alone, and for the sole benefit and indemnity of respondents. It is not a case of dependent covenants or mutual stipulations. Appellant has the right to sue at law upon the notes. Has he not then the legal right to invoke the statutory remedy by attachment? The obligation to pay the notes is absolute and unconditional and independent of the bond.

If the notes in suit are to be regarded as having been made in the State of Nevada, then the lien must depend on the laws of that State. Judge Story, in his Conflict of Laws, section four hundred and twenty-four, says: "And here the general principle of the common law is that the laws of the place where such property is situated, exclusively govern in respect to the rights of the parties, the modes of transfer, and the solemnities which should accompany them." (14 Vesey, 541; and *Elliott* v. *Lord Mento*, 6 Madd. 16.) From this doctrine

it is obvious that the Practice Act of this State, in respect to attachments, cannot be made to apply to liens, express or implied, upon real estate situate in a foreign State.

*C. Hartson*, and *T. J. Tucker*, for Respondents.

Appellant was a vendor of real estate, who had retained the legal title as security for the purchase money. As such he had a vendor's lien. (*Goulden* v. *Buckalew*, 4 Cal. 107; *Sparks* v. *Hess*, 15 Cal. 192; *Taylor* v. *Kinney*, 20 Cal. 618.) A lien is simply a right to possess and retain property until some charge attaching to it is paid or discharged. The vendor is treated in equity as the equitable owner of the land. The statute uses the most comprehensive terms to embrace every species of security, viz: "Any mortgage, lien, or pledge, on real or personal property." This includes every lien, whether existing in or out of the State, or whether a lien created by contract or operation of law.

By the Court, RHODES, J. :

Appeal from an order of the County Judge discharging an attachment. It appears from the papers on which the motion was based, that the plaintiff sold to the defendants, Grigsby and Smittle, the undivided half of a quartz mill and certain real estate situated in the State of Nevada, for the sum of eighteen thousand dollars; that the plaintiff executed to the defendants a bond conditioned for the conveyance of the property, upon their making payment of the purchase money; that the promissory notes in suit were given by the defendants for a part of the purchase money; that the bond was executed and delivered by the plaintiff to Grigsby, in this State; that at the same time Grigsby signed the notes and delivered them to the plaintiff; that Smittle executed and delivered the notes to plaintiff in the State of Nevada. The notes are dated at Washoe City, in the State of Nevada, but no place of payment is specified either in the notes or in the bond. The premises have not

been conveyed to the defendants.    The attachment was levied on the property of Grigsby.    Smittle was not served with process, nor was any property of his attached.

Grigsby moved to discharge the attachment on two grounds : first, because the notes were secured by a lien upon real property ; second, because the notes were made and payable in the State of Nevada.    The motion to discharge the attachment was sustained on both grounds.

It is provided by section one hundred and twenty of the Practice Act that an attachment may issue : "First, in an action upon a contract express or implied for the direct payment of money, which contract is made or is payable in this State, and is not secured by a mortgage, lien or pledge, upon real or personal property ; or, if so secured, that such security has been rendered nugatory by the act of the defendant." The defendant claims that the plaintiff holds a vendor's lien upon the premises sold, which serves as a security for the payment of the purchase money.

It is a familiar doctrine of Courts of equity that the vendor of real estate, after an absolute conveyance, retains a lien for the unpaid purchase money ; and Judge Story says : "This lien of the vendor of real estate for the purchase money is wholly independent of any possession on his part, and it attaches to the estate as a trust equally, whether it be actually conveyed or only be contracted to be conveyed." (2 Sto. Eq. Juris. Sec. 1,218.)    The question is very fully considered by Mr. Chief Justice Field in *Hess* v. *Sparks*, 15 Cal. 192, which was a suit to enforce the vendor's lien, the contract of sale remaining unexecuted.    It was there said, after defining the character of the lien held by the vendor after a conveyance, and holding that the vendor, when the contract of sale remained unexecuted on his part, also possessed a lien : "In the present case the vendors have retained the legal title, and evidently as security for the purchase money.    Their position is in most respects similar to what it would have been had they executed a conveyance to the vendee and taken from him a mortgage upon the property.    A mortgage is in form a conveyance of

the legal title, though intended only as a security for the debt. Here the title is retained by the vendors for a smilar purpose of security." In *Salmon* v. *Hoffman*, 2 Cal. 138, the vendee sought a rescission of the contract of sale, but the Court held that the vendors were entitled to their equitable lien for the payment of the purchase money. The same doctrine was announced in *Truebody* v. *Jacobson*, 2 Cal. 286; *Gouldin* v. *Buckalew*, 4 Cal. 111; *Ellis* v. *Jeans*, 7 Cal. 415; *Taylor* v. *McKinney*, 20 Cal. 618; *Baum* v. *Grigsby*, 21 Cal. 177; and *Willis* v. *Wozencraft*, 22 Cal. 607. The point was directly involved in a part, though not in all of those cases; and although it may be a matter of regret that the Court had not adhered to the easy and plain rules of the Statute of Frauds, the doctrine may now be regarded as firmly settled in this State, so far as it depends on the action of the Courts.

The vendor's lien constitutes a lien within the words of section one hundred and twenty. But the plaintiff insists that the lien contemplated by the statute is one of "statutory origin and resting in contract," and not one "known only to and recognized by Courts of equity." It is sufficient to say, without considering the origin or elements of a vendor's lien, that the statute has made no specification of the character of the liens necessary to fill the requirements of the section, and the Court is not authorized to make any discrimination in favor of or against any particular kind of lien.

It is further objected that the property on which the lien rests is not within this State. The statute has not declared the limitation suggested by counsel, and no sufficient reason occurs to us why the restriction should be made. A lien is none the less a security because the property covered by it is without the jurisdiction of the Courts of this State, and it may be equally or more valuable to the creditor there than it would be if the property were in this State. The policy that seems to have dictated the statute is that the creditor, having a security for his debt by way of a mortgage, lien, or pledge,

should not be entitled to the further security afforded by an attachment.

In conclusion it is proper to say that the presumption, in the absence of proof on the subject, is that the laws of Nevada, in respect to the vendor's lien, are the same as those of this State. (*Morris* v. *Harris*, 15 Cal. 226 ; *Hickman* v. *Alpaugh*, 21 Cal. 225.)

Order affirmed.