## DAVID PORTER v. BENJAMIN S. BROOKS.

WRIT OF ATTACHMENT,—WHEN PROPER TO ISSUE.—The policy of the law is, that a creditor holding a security by way of "mortgage, lien, or pledge, upon real or personal property," shall not resort to the summary process of attachment until he has exhausted his security. But such lien or pledge must be of a fixed, determinate character, capable of being enforced with certainty, and depending on no conditions.

IDEM—VENDOR'S LIEN.—A vendor's lien for the unpaid purchase price of a tract of land, where the land had been conveyed by the vendee to a third party before action brought against the former by the vendor to recover said purchase price, is not of such fixed and determinate character as to bar the plaintiff in such action the right to a writ of attachment against the property of the defendant therein.

*Per* SAWYER, C. J., *concurring specially :*

IDEM.—A vendor's claim to have the purchase money charged upon the land conveyed, before a complaint is filed to enforce it, is not a *lien* securing the debt, within the meaning of the terms used in the one hundred and twentieth section of the Practice Act.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*B. S. Brooks, propria persona.*

The plaintiff had a vendor's lien. · (2 Story's Eq. Jur. Sec. 1,218; *Sparks* v. *Hess*, 15 Cal. 186; *Bayley* v. *Greenleaf*, 6 Wheat. 46; *Bostwick* v. *McKorkle*, 22 Cal. 670; *Kittridge* v.

*Stevens,* 16 Cal. 382; *Salmon* v. *Hoffman,* 2 Cal. 138; *True-body* v. *Jacobson,* 2 Cal. 286; *Goulden* v. *Buckalew,* 4 Cal. 111; *Ellis* v. *Jeans,* 7 Cal. 415; *Allen* v. *Phelps,* 7 Cal. 257; *Bryan* v. *Sharp,* 4 Cal. 350; *Cahoon* v. *Robinson,* 6 Cal. 227; *Walker* v. *Sedgwick,* 8 Cal. 403; *Taylor* v. *McKenney,* 20 Cal. 618; *Hunt* v. *Waterman,* 12 Cal. 305; *McHenry* v. *Reilly,* 13 Cal. 75; *Baum* v. *Grigsby,* 21 Cal. 177; *Williams* v. *Young,* 17 Cal. 406; *Willis* v. *Wozencraft,* 22 Cal. 607; 5 Cow. 232; *Lewis* v. *Covillaud,* 21 Cal. 179; *Burt* v. *Wilson,* 28 Cal. 633.)

This is such a lien as under the provisions of the Practice Act denied him the benefit of an attachment. (Practice Act, Sec. 120; Stats. 1860, p. 300, Sec. 13—p. 303, Sec. 23; *Payne* v. *Bensley,* 8 Cal. 266; *Hill* v. *Grigsby,* 32 Cal. 55.)

*George & Cary,* for Respondent.

Conceding that Porter did have a vendor's lien on the sale, and a lien within the inhibition of the Attachment Law—he waived or lost it by taking the note of Brooks as security for the purchase money. According to the statement of Brooks, Judson was really the purchaser of the claim, and paid a portion of the purchase money, and Brooks gave his note for the balance. Porter, by accepting the note, elected to abandon, and did abandon, whatever lien he had upon the land. It is true that the mere taking of the note of the vendee is no waiver, but taking the note of a third party is. In fact, the vendee waives his lien if he manifests an intention to look to other security than the land itself. (4 Kent Com., 10th Ed., top p. 173, p. *152; *Vail* v. *Porter,* 4 Comst. 313; *Hunt* v. *Waterman,* 12 Cal. 303; *Griffin* v. *Blanchard,* 17 Cal. 70; *Baum* v. *Grigsby,* 21 Cal. 175.) By bringing this action on the note, plaintiff has manifested his intention to abandon his vendor's lien, if ever he had any.

A party may always waive a right created by statute for his benefit, and why may he not waive a right created for his benefit by a Court of equity? (*Brown* v. *Aubrey,* 22 Cal. 571; *Tombs* v. *Rochester Railroad,* 18 S. C. 583; *Buel* v. *Trustees of Lockport,* 3 Comst. 197.)

The right of a vendor to charge the land sold for the purchase price, does not become a lien thereon until his bill is filed to assert it, but is a mere equity or capacity of acquiring a lien. (White & Tud. Lead. Cas., Am. Ed. 241; 1 Wash. on Real Property, 537; *Sparks* v. *Hess*, 15 Cal. 193; *Baum* v. *Grigsby*, 21 Cal. 172; *Ellis* v. *Jeans*, 7 Cal. 415; *Goulden* v. *Buckalew*, 4 Cal. 107.)

In this case there is a bare right—a floating equity—liable to be defeated by the creditors of the vendee or by the vendee himself should he sell or mortgage the land to a *bona fide* purchaser, or mortgage without notice of the equity. (1 Wash. on Real Property, 538; *Taylor* v. *Baldwin*, 10 Barb. 626; *Aldridge* v. *Dunn*, 7 Blackf. 249; *Bayley* v. *Greenleaf*, 7 Wheat. 46; *Webb* v. *Robinson*, 14 Ga. 216; *Gann* v. *Chester*, 6 Yerg. 205; *Roberts* v. *Rose*, 2 Humph. 145.)


By the Court, CROCKETT, J. :

This is an appeal from an order denying a motion to dissolve an attachment. The action is founded, in part, on a promissory note, and partly on a small book account. The defendant moved to dissolve the attachment on the ground that, after action brought, he had tendered to the plaintiff and his attorneys payment of the book account, which tender was refused; and he avers his readiness to pay at any time. In respect to the promissory note, he avers that the consideration of it was the following, to wit: That he procured from the plaintiff a conveyance for an undivided interest in Yerba Buena Island, and the note in contest was made to secure a part of the purchase money; that, though the conveyance was made to the defendant, and he executed his own promissory notes for the purchase money, the purchase was, in fact, made by him for the benefit of one Judson, to whom he immediately conveyed the property, without receiving any consideration therefor, and the title still remains in Judson; that Judson furnished the money to make a cash

payment, which was made at the time of the purchase, and paid one of the promissory notes given for the purchase money, but refuses to pay the note in contest. He claims that, upon these facts, the plaintiff has a vendor's lien on the land, and therefore was not entitled to an attachment. The plaintiff filed an affidavit on the hearing of the motion, in which he alleges that he knew no one but the defendant in the transaction relative to the island; that if Judson had any interest in the matter he was ignorant of it; but, on inquiring of Judson, since the filing of the plaintiff's affidavit, he was informed that he only loaned the money to the defendant for the purchase of the island, on his promise to secure the loan; but, failing to obtain other security, he took the conveyance from the defendant, and was ready to reconvey at any time, on payment of the amount advanced.

On this showing the Court refused to discharge the attachment, and the defendant has appealed.

The statute authorizes an attachment in the event that the debt "is not secured by a mortgage, lien, or pledge upon real or personal property; or if so secured, that such security has been rendered nugatory by the act of the defendant." (Practice Act, Sec. 120.) The appellant claims that the plaintiff has a vendor's lien on the land, and for that reason was not entitled to an attachment on the promissory note. If it be conceded that the plaintiff had a vendor's lien of a fixed and determinate character, the case would fall strictly within *Hill* v. *Grigsby*, 32 Cal. 55, in which this Court held that a person entitled to a vendor's lien of that character as security for the debt could not maintain an attachment for the purchase money. But in that case the vendor had made no conveyance, and had withheld the title as his security, the contract being executory. In this case the title of the plaintiff, whether good or bad, was conveyed to the defendant, and by him to Judson. If the plaintiff retained a vendor's lien, under the circumstances, it was only an equitable right to resort to the land for payment, which right was liable to be defeated by an alienation or incumbrance, made

by the vendee to a *bona fide* purchaser, for value, without notice. Is the vendor bound to follow the land with this equitable lien into the hands of a purchaser from the vendee, and thus test the purchaser's rights, before he can resort to an attachment against the vendor? Is this such a lien as the statute contemplates? Is it such a lien as secures the debt in the sense of the statute? We think not.

The policy of the law is, that a creditor, holding a security by way of "mortgage, lien, or pledge upon real or personal property," shall not resort to the summary process of attachment until he has exhausted his security. But it must be a lien of a fixed, determinate character, capable of being enforced with certainty, and depending on no conditions. If the land has been alienated by the vendee, it is not incumbent on the vendor to go through a litigation with the purchaser, in order to ascertain whether he is a purchaser for value, without notice, before resorting to his attachment. The vendee, by alienating the land, has not only interposed an obstacle in the way of enforcing the lien, but has rendered it doubtful whether the lien is not wholly defeated. He cannot compel the vendor to solve this doubt by proceedings against the purchaser before suing out his attachment.

The purchaser (Judson) is no party to this action, and will not be bound by the judgment therein. If the attachment be dissolved, it may be that in a proceeding against Judson to enforce the vendor's lien it will be proved that he holds the title by way of mortgage, taken in good faith and without notice, to secure an indebtedness from Brooks. This would defeat the vendor's lien *pro tanto*. Until that question is tried in a direct proceeding against Judson, it cannot be known with certainty whether or not the plaintiff has an available lien. We cannot try that question in this cause on *ex parte* affidavits, and, as the case is now presented, the defendant has failed to show that the plaintiff has such a vendor's lien as will defeat the attachment.

Order denying motion affirmed.

SAWYER, C. J., concurring specially :

After a careful consideration of the subject, I have arrived at the conclusion, that so shadowy a right as the claim of the vendor of land, to have the unpaid purchase money after default charged upon the land by a Court of equity, is not a lien within the provisions of the Practice Act, which precludes the right to attach. It is not a lien acquired by express contract, but is one of a very imperfect character, at least inchoate, not recognized at all in a Court of law, where attachments are enforced, but fastened upon the land by a Court of equity upon application duly made, even against the apparent intentions of the parties. A Court of equity seems to proceed upon the sole ground, that it is inequitable for a party to retain the land without paying the consideration; and, when it can, without injury to other parties, it will require payment out of the land. If no security has been taken, and no act amounting to a repudiation of this equitable claim is done at the time of the sale, although nothing of the kind was in fact contemplated by the parties themselves, the lien, such as it is, or right to secure a lien, is cast upon the vendor, willing or unwilling. Yet the vendor has no present legal right, and no means whatever of protecting his claim against the act of the vendee in selling to an innocent purchaser at any time before the money falls due, nor is he in a condition to file his bill in equity to enforce it. It is a right *in posse*, rather than *in esse*, which may be divested by the acts of the vendee without the fault of the vendor, before he can be in a position to render it available. It is a mere contingent privilege, personal to the vendor himself, which cannot be assigned with the debt, and over which he has no control whatever, till he can take hold of the property by a bill to enforce his privilege, or claim actually filed. (*Baum* v. *Grigsby*, 21 Cal. 172.) The vendor has no present indefeasible right to have his debt charged upon the land. It is not a present specific lien. He is simply in a condition, which may, or may not, at some future time, de-

pending upon contingencies over which he has no control, enable him to acquire a lien, or obtain an appropriation of the proceeds of the land to the payment of the debt, through the intervention of a Court of equity. It seems to me to be a misnomer to call this imperfect, contingent, unassignable personal privilege, before suit brought, a present subsisting lien in any sense. It is but a possible capacity to acquire a lien, at some future day. I cannot think it a "lien," by which a debt can be said to be "secured," within the meaning of those terms as used in the Practice Act with reference to attachments.

Both Courts and law writers have been at a loss to properly characterize the right of the vendor under consideration, and for the want of a better name have somewhat loosely called it an equitable lien. The learned authors of the American Notes to White & Tudor's Leading Cases in Equity, in discussing the character of this right, observe: "But a lien of this kind is not an original, specific and absolute charge on the land, but only an equity to resort to it upon the failure of the personal estate. The personal estate is the primary fund for the payment of the vendor's claim, and the real estate is liable only secondarily. Therefore, a bill in equity, to enforce a vendor's lien, must show that the complainant has exhausted his remedy at law against the personal estate, or must aver such facts as show that the complainant cannot have a full, complete and adequate remedy at law," etc., and cite numerous authorities to sustain the position. (Vol. I, Ed. 1852, top page 274.) Again: "The circumstances that the vendor's claim is not such an interest as he can assign, and that he cannot charge the land until he has exhausted his legal remedies against the personal estate, which the best authorities agree in, indicate unmistakably that this is neither an equitable mortgage nor a trust. The true nature of the claim appears to be this: It had its origin in a country where lands were not liable, both during and after the death of the debtor, for all personal obligations, indiscriminately, including debts by simple

contract; and it seems to be an original and natural equity that the creditor whose debt was the consideration of the land should, by virtue of that consideration, be allowed to charge the land upon failure of personal assets. *It is not a lien until a bill has been filed to assert it; before that is done, it is a mere equity, or capacity to acquire a lien, and to have satisfaction of it. When a bill is filed it becomes a specific lien."* (*Ib.* 279.)

So, also, Mr. Justice Story says : " The lien of a vendor for purchase money is not of so high and stringent a nature as that of a judgment creditor, for the latter binds the land according to the course of the common law; whereas, the former is the mere creation of a Court of equity, which it molds and fashions according to its own purposes. It is, in short, a right which has no existence until it is established by the decree of a Court in the particular case, and is then made subservient to all other equities between the parties, and enforced in its own peculiar manner, and upon its own peculiar principles. It is not, therefore, an equitable estate in the land itself, although sometimes that appellation is loosely applied to it." Again : " It is, too, so peculiarly and exclusively the creature of a Court of equity *that its existence cannot safely be averred independent of the decree of such a Court."* (*Gilman* v. *Brown,* 1 Mason, 221.)

So, also, in *Sparks* v. *Hess,* 15 Cal. 198, Mr. Chief Justice Field observes : " This lien (vendor's) is not, however, a specific and absolute charge upon the property, but a mere equitable right to resort to it upon failure of payment of the vendee. The vendor has parted with the equitable title, and possesses only a bare right, *which has no operative force or effect, until established by the decree of the Court."* The same observation is substantially repeated by the Chief Justice in *Baum* v. *Grigsby,* 21 Cal. 176, with other remarks illustrative of the character of this claim, which, he says, " Is the personal privilege of the vendor." He further adds : " ' The vendor's lien,' says the Supreme Court of Tennessee, '*is nothing more than a mere equity capable of acquiring the force and efficacy of*

*a lien under certain ci' cumstances in the event of the non-payment of the purchase money,'"* etc.   (*Ib.* 177.)

Although there is some conflict among the authorities on the point, it has often been held, and, perhaps, the weight of authority is that way, that even creditors of the vendee take precedence of the vendor's lien. Washburn says: "But upon the question how far it (the vendor's lien) shall prevail against creditors of the purchaser, there have been various opinions. As a general proposition, it does not prevail against such creditors, though against·a voluntary assignment made by the purchaser in favor of his creditors, it will, if the vendor file his bill in equity to enforce it before the execution of the trust, especially if the assignment be in favor of antecedent creditors; and *bona fide creditors* [not purchasers] without notice are considered as having equities superior to that of the vendor." (1 Washb. Real Prop. 500; see also to the same effect 1 Wh. and Tud. Lead. Cas. in Eq. 279, 280.)

If the foregoing authorities present the true idea of the character of the so-called vendor's lien, it is not too much to say that it cannot in any just sense be regarded, before complaint filed to enforce it, as a present lien, or as a security for the debt.

A mechanic who labors upon a building has, under the statute, the privilege of acquiring a lien upon it, by taking certain proceedings within the prescribed time; but he has, in fact, no lien till the proceedings are taken. Like a vendor of real estate, he has a capacity to acquire a lien without having the lien itself, until the property is taken hold of by the proper proceeding—in the one case, by filing the proper notice in the Recorder's office, or doing whatever else the law requires, and in the other, by filing his bill in a Court of equity. No one would claim, I apprehend, that the mechanic would be precluded from attaching by his right to acquire a lien, till he had, in fact, secured a lien by the acts necessary to give it life. Yet he is in a better position than a vendor of real estate; for the mechanic's right to a lien cannot be

defeated without his own *laches*, while the vendor's can. The lien of the bailee for hire, the tailor upon the garment made or repaired, the jeweler upon the gem which he has set, the shipwright upon the vessel constructed, or repaired, or the like, for his compensation, is in no sense analogous to that of the vendor of real estate; because the right of the former is a present, subsisting, indefeasible lien, recognized *as such, at law*, and not depending upon the grace of a Court of equity. The lienholder himself generally has the possession of the property, of which he cannot be deprived, *at law*, or *in equity*, till the claim is satisfied. It requires no future act to endow his lien with vitality, or fasten it upon the property. I see no reason why he may not assign the claim secured, and pass the lien with the possession of the property as incident to the debt, like any other security. It is not, therefore, like a vendor's lien, a mere personal, unassignable privilege to acquire a substantial lien at some future time, provided nobody else in the meantime secures a prior right, and defeats this privilege. It is a right *in esse*, and not, merely, *in posse*, and one of which the lienholder cannot be deprived either in a Court of law, or equity, or by the acts of third parties, without his own concurrence. A claim covered by such a lien may well be said to be " *secured*." But in what sense can a vendor's lien be said to secure the purchase money before bill filed?

I feel no embarrassment in following such lights as Mr. Justice Story, and those other Judges and law writers, who have attempted to define, with some degree of precision, the right of the vendor, in saying that the lien has no existence till a bill is filed in a Court of equity—or " that its existence cannot safely be averred independent of the decree of such a Court."

In *Hill* v. *Grigsby*, 32 Cal. 55, there was no occasion to consider this precise question, and our attention was not so particularly drawn to it; for in that case the vendor had not conveyed the land, and he had a clear, fixed and indefeasible legal right which could not be divested without his consent. He was perfectly secured by a lien that was paramount to

all other claims existing, or that could be acquired without the acquiescence of the vendor himself.

For the reasons indicated, I am of the opinion that a mere vendor's claim to have the purchase money charged upon the land conveyed, by whatever name it may be properly called, before a complaint filed to enforce it, is not a *lien securing the debt* within the meaning of these terms as used in the provisions of the Practice Act under consideration, and, on this ground, I concur in the judgment of affirmance.

Sanderson, J., delivered the following dissenting opinion, in which Mr. Justice Rhodes concurred:

The remedy by attachment is statutory, and cannot be resorted to except in those cases for which it has been expressly provided. The Legislature, in giving the remedy, has not only limited its use, in terms, to certain causes of action, but has further provided that if certain conditions are found to exist in connection with the causes of action named, then, even as to them, the remedy shall not be allowed. To entitle a party to the remedy, he must, therefore, show, not only that he has a cause of action which is named in the statute, but that it is unaccompanied by any of the conditions in view of which the remedy is denied. He must show that his cause of action is upon a contract, express or implied, for the direct payment of money; that the contract was either made in this State, or, if made out of the State, that it was made payable in this State, and that the payment of the money is not secured by a mortgage, lien, or pledge upon real or personal property; or if so secured, that such security has been rendered nugatory by the act of the defendant.

The terms " mortgage," " lien," or "pledge" are legal terms, and have been used in their strict legal sense. They have been used without qualification or limitation of any

kind. No particular kind or class of mortgages, or liens, or pledges is designated as intended, nor mentioned as excepted. Therefore, all mortgages, all liens, all pledges, mentioned or defined as such in the books, are necessarily included. Hence, if, in view of the conditions presented by the facts of a case, the law declares that a mortgage or lien, or pledge of any kind known to the books exists, the attachment must be denied, for the statute makes no distinction, and, for that reason, the Courts can make none. What ground is there for saying that any lien is not included? Is there any more ground for saying that certain liens are not included than there is for holding that certain mortgages or certain pledges are not included? It has not been suggested, nor can it be pretended that there is. If, then, the Courts can distinguish between liens, and declare one to be within the statute, and another without, by parity of reason they may do the like in relation to mortgages and pledges, which is to say that they may invert the most salutary maxim by which Courts are governed—*jus dicere, non jus dare*—and make it read the other way.

I am unable to perceive the force of the reasoning by which it is sought to prove that the right which the vendor of land has to look to the land for the payment of the purchase money has for all time been miscalled a lien by legal writers, Judges, and lawyers, and that it ought to have been called something else. Conceding it to be so, and that this discovery, though late, is substantial, what assurance have I that a like discovery was made by the Legislature at the time or prior to the passage of the Attachment Law, and that, therefore, it was considered to be unnecessary to except vendor's liens in terms from the operation of the statute? I am inclined to the opinion that the alleged misnomer, had it been known to the Legislature, is, at least, so far doubtful, that that body, had it so intended, would, nevertheless, have expressly excepted the lien from the operation of the statute, and not incurred the hazard, not only of the Courts discovering the misnomer themselves, but also of attributing to the

Legislature a like good fortune. I am, therefore, forced to the conclusion that the Legislature by which our Attachment Law was passed was not in advance of the most eminent of our Judges and lawyers, and that if the latter were, at that time, laboring under a mistake, the former was equally unfortunate. From time immemorial the right of a vendor to look to the land as security for the payment of the purchase money has been denominated a lien, and it is very certain that, as yet, the vocabulary of the law does not supply a better appellation, and until it does, the makers and ministers of the law will alike have to use it.

Nor am I able to perceive the force of the suggestion that a vendor's lien is an imperfect and uncertain security, and, therefore, ought not to stand in the way of an attachment. Conceding all that is claimed on that score, the result remains the same, for the question is not as to the perfection or certainty of the security, but as to the lien. It is none the less a lien, because the security which it affords may be of little account in comparison with that afforded by other liens—its inefficiency, as I conceive, cannot be taken as a test of its existence. But I dissent entirely from the suggestion that the security afforded by it is imperfect, or inadequate. While it lasts it is more perfect than a mortgage, for the latter may have been imperfectly executed or acknowledged, while the former is subject to no such hazards. It is as valuable, for it covers the whole land, and is as easily and readily enforced by the Courts. It is not worthless until it has ceased to exist, and when it has ceased to exist. it has also ceased to stand in the way of an attachment.

It cannot be denied that a vendor's lien is a security for the payment of the money due upon the contract of sale; and such being the case, it must be considered as included in the statute, not only by the terms of the statute, as I have attempted to show, but by the very object and purpose of the Attachment Law; which is simply to afford security for the payment of money due upon contract, where no security exists, and not to afford additional security. The intent to

afford no security where security already exists is as obvious as the intent to afford security where it does not exist. The existence of security is, therefore, the test of the plaintiff's right to an attachment, and not the form in which it exists; the form is immaterial, the thing to be considered is the substance—hence the broadest language has been used for the purpose of including every kind and character of security known to the law. The word "lien" is the most comprehensive word which could have been used to express the intent of the Legislature, not to allow an attachment, except in the absence of all security. Every bailee for hire has a lien on the thing for his compensation—the tailor upon the garments which he has made, the ship carpenter upon the ship which he has built, the house carpenter upon the house which he has erected, the agistor upon the horse which he has pastured, and the jeweler upon the gem which he has set—a lien not contracted for, but provided by the law. These liens are included in the statute, and while they exist no attachment can be taken. Are they intrinsically different or better than that of the vendor of land? Are they, in a legal sense, any more perfect or available? Why, on the score of reason merely, independent of the language of the statute, should they stand in the way of an attachment, and the lien of the vendor of land interpose no obstacle? They, all alike, constitute security, and, therefore, by parity of reason, in my judgment, alike preclude an attachment where they are found to exist.

Entertaining these views, I am compelled to dissent from the conclusion reached by a majority of my associates.