ABRAHAM MAY v. KATE NEWMAN.

95  501
101  517
101  523

*Principal and surety—Attachment—Fraud.*

1. It is competent for the principal to agree with the surety that, in case he fails to secure upon demand the amount for which the surety has become liable, it shall be treated as due and payable forthwith.

2. Plaintiff, who indorsed certain notes for the defendant in reliance upon the statements of her agent as to her assets and liabilities, which proved to be false, is held entitled to commence suit by attachment to recover the amount for which he is liable as such indorser, the finding of the trial judge that he had notice and became aware of the falsity of such statements before he incurred a portion of such liability not being supported by the testimony.

*Certiorari* to Kent. (Adsit, J.) Argued April 7, 1893. Order dissolving writ of attachment vacated, May. 31, 1893. The facts are stated in the opinion.

*G. A. Wolf* (*L. E. Knappen,* of counsel), for plaintiff, and petitioner in *certiorari.*

*Peter Doran,* for defendant, and respondent in *certiorari,* contended:

1. The case is controlled by *Estlow v. Hanna,* 75 Mich. 219.

McGRATH, J. This is *certiorari* to review the action of the circuit court in dissolving an attachment.

Defendant was engaged in the clothing business at Grand Rapids. One Barth, who had been indorsing her paper, died, and May was approached by defendant, to aid her, as indorser, in taking care of that paper as it matured. A written agreement was finally entered into, which recited that, " *Whereas,* said first party is desirous of having second

party indorse certain notes for her, now indorsed by Jacob Barth, amounting to about $1,000, and also to indorse any renewals of said notes, and indorse other notes for her, and guarantee bills purchased by her in the future." Defendant agreed to secure May by first mortgage on her stock, whenever the latter should so request, and May agreed "to indorse the notes so indorsed by Jacob Barth, and, as long as he feels secure, will indorse such renewals and further indorsements, and guarantee such purchases, as first party may require." It was further agreed that if, at any time, May should feel insecure, " he may demand the instant execution and delivery of said chattel mortgage," and, if defendant " does not execute said mortgage instantly, said party may treat all indorsements and guaranties, as between the parties hereto, forthwith due and payable, and the amount thereof is hereby agreed to be liquidated damages; and he may thereupon instantly begin suit, by attachment or otherwise, for the amount of the notes so indorsed and accounts guaranteed, whether said notes or accounts have then matured or not."

Between the time of the execution of this contract and the commencement of this suit, plaintiff had indorsed notes aggregating over $3,000, some of which, however, were renewals, and others of which had been paid.

The court finds " that the plaintiff was induced to enter into said agreement by reason of certain false and fraudulent statements made to him by Harry Newman, the authorized agent of the said defendant, in regard to the assets and liabilities of the defendant at the time of making said agreement; that the plaintiff had notice and became aware that such statements were false on or about the 11th day of March, and before indorsing the note of that date, and notes subsequently indorsed, hereinafter described;" that at the time of the commencement of this

action, July 22,1892, plaintiff had indorsed the following
notes, which were then in the hands of a third party,
viz.:

| | |
|---|---|
| "Note dated February 29, 1892, due four months from date | $190 |
| March 9, four months | 300 |
| March 11, four months | 400 |
| June 9, two notes, 60 and 90 days, $250 each | 500 |
| June 18, 90 days | 338 |
| Making a total of | $1,728 |

"That the notes given of dates June 9 and 18, amount-
ing to $838, were not then due; that the notes of dates
February 29, March 9, and March 11, amounting to $890,
had become due and payable, but that neither the defend-
ant nor the plaintiff had paid the same, or any part thereof,
to the owner and holder thereof; that the notes of June
9 and 18 were renewals of notes given prior to March 11."

The court further finds, as a matter of law, that at
the time of the commencement of this suit the plaintiff
was not entitled to an attachment against the defendant.

The allegation of the affidavit for the writ upon which
plaintiff relied was that defendant had fraudulently con-
tracted the obligation respecting which the suit is brought.
The court finds this allegation to be sustained by the
proofs, but also finds that plaintiff had notice and became
aware that such statements were false when he indorsed
the note on March 11, and under the rule laid down in
*Estlow v. Hanna,* 75 Mich. 219, evidently held that that
portion of the claim was not affected by the fraud.

The undisputed facts are that, at the time the agree-
ment was entered into, defendant represented her indebted-
ness upon notes indorsed by Barth to be $1,000, and her
other indebtedness to be about $1,200, making a total of
$2,200. Her indebtedness was in fact about $3,300 on
notes indorsed by Barth, independent of the other indebt-

edness.    At the time when this suit was instituted she owed upon notes indorsed by plaintiff $1,728, and otherwise about $1,700, or a total of $3,428.    Defendant admits that plaintiff indorsed, of the Barth indebtedness, but $1,838, and that she had paid, without plaintiff's knowledge, from $1,200 to $1,500 of that indebtedness.    This was done, in part at least, by the depletion of the stock and the increase of the other indebtedness.    It is true that, as plaintiff was asked to indorse in excess of the $1,000 to take up Barth notes, he was told that the particular note had been overlooked; but there is no pretense that on March 11, or at the time of any of the subsequent indorsements, plaintiff knew that the Barth indorsements aggregated $3,300, or that defendant had been applying the proceeds of stock to the payment of other Barth notes, of the existence of which plaintiff was kept in ignorance, instead of liquidating the other indebtedness.    Defendant had on February 6 represented her stock on hand to be worth $7,000.    On March 11 she represented it at between $6,000 and $7,000.    It was inventoried by the sheriff at $2,072.50, although it is claimed that the inventory was low.    There is no testimony that plaintiff knew the actual amount of stock on hand on March 11.    He made no inventory, but simply gave it a cursory survey, and must be deemed to have relied somewhat on representations made to him by defendant.    Had defendant's representations made February 6 been true, the amount secretly paid on undisclosed Barth notes would have reduced the whole indebtedness of the business to between $700 and $900, or, had they been true except as to what had been disclosed, defendant's liabilities would have been less than $2,000, instead of nearly $3,500.    Defendant, during the very period covered by the later indorsements, was applying the proceeds of sales to the payment of an undisclosed indebtedness, to plaintiff's prejudice.    Each transaction was

tainted with fraud, so long as any part of the truth was concealed, so long as the conditions did not correspond with the representations originally made as modified by what had been actually disclosed. The transactions differed only as to the degree or extent of the fraud practiced. In *Estlow v. Hanna, supra,* the transactions were capable of severance; here they are not.

Some criticism has been made upon the agreement. Plaintiff does not base his right to an attachment upon the agreement. Creditors are not here complaining. A surety may, by agreement, be given a right of action before the payment of the debt. Brandt, Sur. § 221; *Fletcher v. Edson,* 8 Vt. 294; *Cushing v. Gore,* 15 Mass. 69. Defendant agreed that, in case she refused to secure upon demand, the amount for which plaintiff had become liable should be treated as a sum due and payable forthwith. The plaintiff had the right to prescribe the conditions upon which he would incur the responsibility for the defendant's debt, and his assuming that liability was a sufficient consideration for the defendant's engagement with him.

It follows that the order vacating the attachment must be set aside, with costs of both courts to plaintiff.

The other Justices concurred.