HOWARD S. JAFFRAY ET AL. V. WARD H. JENNINGS AND WARD L. JENNINGS.

*Attachment—Partnership—Fraud of one member of firm.*

The individual property of an innocent copartner is not liable to attachment for a firm debt fraudulently contracted by the other member of the firm.

So held where, after a suit had been commenced against two partners for a firm debt, a writ of attachment was sued out upon an affidavit alleging that the defendants had fraudulently contracted the debt upon which the action was brought, and the same was levied upon the individual property of one of the defendants, who was innocent of the alleged fraud, the same having been perpetrated by his copartner.    At the time of the levy the firm had sufficient personal property out of which the claim could have been satisfied.    The defendant whose property had been seized moved for the dissolution of

the attachment, and an order granting the relief prayed for is affirmed.[1]

*Certiorari* to Lapeer.   (Moore, J.)   Argued April 27, 1894.   Decided September 25, 1894.

Plaintiffs bring *certiorari* to review proceedings dissolving an attachment.   Order of dissolution affirmed.   The facts are stated in the opinion.

*Fletcher & Wanty,* for petitioners in *certiorari.*

*Geer & Williams,* for defendants.

HOOKER, J.   Plaintiffs were copartners, residing in New York, and were jobbers, of whom the defendants (father and son, and also partners) purchased goods.   The son, Ward L. Jennings, having purchased a quantity of goods for his firm from the plaintiffs, the latter commenced proceedings by attachment upon an affidavit which alleged that the defendants fraudulently contracted the debt upon which the action was brought, viz., that arising from the purchase mentioned.[2]   The writ was levied upon property belonging to the father, and upon his application the attachment was dissolved by the circuit judge.   It was admitted that at the time of the levy the firm had sufficient personal property out of which the claim could have been satisfied.   Defendant's contention is that the individual property of the innocent defendant was not subject to seizure by attachment.

Counsel for the plaintiffs build a strong argument upon

[1] For note on "Attachment of Individual Property of one Partner for Fraud of his Copartner," see report of this case in 25 L. R. A. 645.

[2] After the commencement of suit by declaration against both defendants, the attachment was sworn out under How. Stat. §§ 8018–8023, which authorize the issuance of a writ of attachment in a suit already commenced.

the doctrine that each partner is an agent of his fellows, citing *May v. Newman,* 95 .Mich. 501, to the proposition that an attachment lies against a debtor whose agent fraudulently contracted the debt. But the statute upon which the remedy by attachment depends has relieved the innocent partner from the application of this rule. An examination of the statutes may aid in solving this question. We start with the proposition that attachment ·is a harsh and extraordinary remedy, unknown to the common law; and the statutory provisions upon which the right depends, being in derogation of the common law, must be strictly construed, and cannot be extended beyond their terms. See cases cited in 1 Jac. & C. Dig. p. 96, § 1; *Estlow v. Hanna,* 75 Mich. 219, 224.

An action against joint debtors is like any other action. It is aimed at the individual debtors. A service on one is not a service upon the other; they may appear separately; their defenses may be different; the judgment is against each for the whole amount; the execution issues against the individuals, the officer being commanded to collect the debt from the goods and chattels, and, for want thereof, of the lands and tenements, of the individuals. And this is as true where the joint obligation is a partnership debt as in cases where the debtors are not copartners. The act authorizing proceedings in attachment permits any creditor to have an attachment against his debtor, upon conditions mentioned. The conditions are that he shall show that the defendant—*i. e.,* the debtor— is believed to be guilty of certain acts, or to possess certain intentions regarding the debt or his property, fraudulent in character, the general tenor of which indicates danger that such debtor will put his property beyond the reach of the creditor. The law lays hold of the property of such debtor, to preserve it for the creditor. So long as there is a sole debtor, no difficulty is likely to

arise; but, when the debt is joint, the question arises, how far should the fraudulent acts and intentions of one subject the property of another to seizure? The acts, if strictly construed, only provide for attachment against the debtor who is guilty of the fraud. An additional remedy, summary in its nature, is given against him. It is given, in terms, against no others. And where the act is done by one only, the law can only be made applicable to another by invoking the doctrine of agency.

No one will question the fact that one can, through an agent, subject his property to attachment; and this is as true where the agent is a partner as where he is not, and where the act complained of is the fraudulent purchase of goods by a partner, as in this case. There is much persuasiveness in the argument that, as the firm received the benefit and appropriated the fruit of the transaction (whether with knowledge upon the part of both or not), the rule that a partner is an agent of his copartner makes his act the act of both. It would not be so convincing if the cause for attachment were another of those named in the statute—e. g., if one only was shown to have an intent to dispose of the firm property, or had actually done so without the knowledge of his partner, or where he absconded, or removed out of the State, or was about to do so, with intent to defraud the firm creditors. Still more hard would be the attachment against one where his copartner has merely resided out of the State for three months, which in itself is ground for attachment, regardless of the honesty of his intention. Can it be said that in all of these cases these acts are partnership acts, binding the partners under this application of the doctrine of agency? Is it true that the creditors of a firm in Michigan, one of the members of which lives in Chicago, have the absolute right to commence all actions against the firm by attachment, and to levy not only on the firm property,

but that of each resident member, as well as that of the non-resident? If not, it must be that this doctrine is improperly applied, or a distinction must be drawn between the different causes for attachment named in the statute, and the liability limited to those acts which we may say, either as a conclusion of fact or law, are the acts of the firm, which would seem to limit the cases to those where the debt was fraudulently contracted, and where the property of the firm had been assigned, concealed, or disposed of with intent on the part of one to defraud the firm creditors. If plaintiffs' theory is correct, these would be the acts of all partners, and subject to seizure not only the partnership property, but the individual property of each partner, no matter how honest, and notwithstanding their solvency. There can be no doubt that partners are bound by the contracts, and many times by the torts, of one of their number, to the extent of liability. But is it as clear that the nature of the remedy is always subject to the same rule? As already stated, this remedy is statutory, and the statutes must show the design to cover such cases as this, or they are not to be treated as within them.

The attachment statute is borrowed from New York. It will be found in the Revised Statutes of 1838 and 1846 and the Compiled Laws of 1857. The section of which How. Stat. § 8015, is an amendment remained unchanged from the time of its adoption until 1861. It is section 19, chap. 1, tit. 4, pt. 3, p. 512, Rev. Stat. 1838. The same is found in Rev. Stat. 1846, chap. 114, § 30, p. 517, and 2 Comp. Laws 1857, § 4771. It reads as follows, viz.:

"When two or more persons are jointly indebted as joint obligors, partners, or otherwise, the attachment may be issued against the separate or joint estates or property of such joint debtors or any of them, and the same proceedings shall be had as hereinbefore prescribed."

It goes without saying that under this act, where all the

joint debtors are shown to have participated in the statutory act, or where it appears that each has entertained the fraudulent intent, the writ should issue against all; and it is as plain that in such case the writ could be issued against the separate or joint estates of the debtors. So far it lays down a plain, consistent, and just rule. Shall we go further, and say that it was meant that the writ would be as far-reaching in cases of joint debtors who are not partners, where one was innocent of wrong? That would probably not be claimed by any one. As to partners, the same claim might be made as is made here, viz., that in dealing with the partnership property the act of one is the act of all, and that the consequences are the same to all.

But this act had received a construction before it became a law in Michigan. In *Re Cyrus Chipman, an absconding debtor*, 14 Johns. 217, decided in 1817, it was held that an attachment might issue against the property of one of several partners who absconded, for a debt due by the firm, although his copartners were resident within the state, and subject to process. This is not conclusive of the question here, and is cited only to show that counsel in that case did not resort to the remedy by attachment against all of the partners. Two years later the same court held that an attachment might issue against the separate property of an absconding debtor upon a debt due from his copartnership. Here, again, the writ appears not to have been sought against the partner who remained. But the case went further, and held that the partnership property could not be seized; and the reason was that the other partner had a *right to retain* it to pay the partnership debts. *In re Smith*, 16 Johns. 102.

It may still be said that in neither of these cases were all of the partners sued in attachment, and therefore there yet remains doubt if the right contended for does not exist

under this statute; and it is probable that such doubt led to the amendment of 1861, which reads as follows:

" When two or more persons are jointly indebted as joint obligors, partners, or otherwise, and an affidavit shall be made, as provided in section two of this chapter, so as to bring one or more of such joint debtors within its provisions, and amenable to the process of attachment, then the writ of attachment shall issue against the property and effects of such as are so brought within the provisions of said section; and the officer shall be also directed in said writ to summon all such joint debtors as may be named in the affidavit attached thereto, to answer to the said action as in other cases of attachment."

Before discussing the statute, let us review the situation. Under the previous statute, attachment lay against all joint debtors, whether partners or not, where it could be shown as matter of fact that all participated in the act constituting a cause. It was also plain that, where one joint debtor only committed such act, his property only was subject to the writ, unless there was a partnership. There was, then, no necessity for legislation to reach either of these cases, for joint debtors, where not partners, were fully protected where innocent of wrong, and the creditor had his remedy against both where both participated, and against the offender where only one was guilty. In this condition of affairs, the Legislature passed section 8015, thereby giving immunity from attachment to joint debtors, including partners, who were not themselves participants in the wrongful act. Now, by a construction of this act, it is sought to say that partners are not within its terms, because the act of one is the act of all, and that, as a matter of law, they are, therefore, all participants in the fraudulent act. If that is so, the statute seems to have no office to perform. It has relieved nobody. Joint debtors, not partners, could not be attacked by attachment before unless guilty. But there may have been a doubt about partners. That doubt seems to have caused

the enactment of a law whose only object must have been to reach and relieve the very class of cases which the construction contended for seeks to exclude from its protection.

As said at the outset, attachment is a harsh and extraordinary remedy. The law may well restrict its use, and deny it as against all honest persons, though they have the misfortune to be connected in business as partners with dishonest persons. Such persons have legal obligations to discharge in relation to the partnership affairs. They must see that obligations are discharged, and the law presumes that they will faithfully do so. No very good reason suggests itself why the private fortune of an honest partner should be seized because his partner has been detected in a fraudulent act in connection with partnership affairs. It is common knowledge that few men or firms can survive an attack by attachment. It is the almost certain precursor of insolvency, as in former days it was of bankruptcy, and we should hesitate before broadening the scope of the act in question.

A case quite similar to the present was before the Court, viz., *Edwards v. Hughes*, 20 Mich. 290. Mr. Justice COOLEY wrote the opinion, and seems to have taken a similar view of these statutes to that expressed above. It is true that the facts in that case may permit it to be distinguished from the present, but the language used is broad, and it is hardly possible that the Court could have overlooked the contingency of such cases as this. Since this decision we think the bar have understood that the liability was limited to such partners as personally participated in the fraudulent act. See Tiffany's Justice Guide (5th ed.), p. 62, note 1, where this doctrine is laid down; 1 Shinn, Pl. & Pr. § 307. See, also, *Miller v. Circuit Judge*, 41 Mich. 326, where a writ issued against non-resident partners only.

We think the learned circuit judge correct in his conclusions, and that his order dissolving the attachment should be affirmed, with costs.   Ordered accordingly.

LONG and GRANT, JJ., concurred with HOOKER, J.

MONTGOMERY, J. *(dissenting)*.   Plaintiffs sued out an attachment against the defendants, alleging that the defendants, comprising a copartnership which consisted of Ward H. Jennings and Ward L. Jennings, fraudulently incurred the indebtedness for which suit was brought. The writ of attachment was levied upon the property of Ward H. Jennings, and he filed an application to dissolve the writ, which was allowed.   The sole question is whether the allegation in the writ that the indebtedness was fraudulently contracted by the defendants was made out.

The evidence is abundant that Ward L. Jennings made false and fraudulent representations as to the standing of the defendants and as a basis for the credit which was extended at the time the goods in question were sold.   It is contended, however, that the defendant Ward H. Jennings' individual property cannot be made subject to attachment by the fraud of Ward L. Jennings.   This question must be determined by ascertaining whether the institution of the proceedings was justified as against the two defendants.

The affidavit very properly alleges that the defendants fraudulently contracted the debt, not that one of the defendants did so.   Each partner was, in the matter of the contracting of the indebtedness, the agent of the partnership; and the fraud of the agent in contracting such indebtedness is the fraud of the principal, as was held in *May v. Newman,* 95 Mich. 501.   The statute in terms provides the remedy by attachment against the defendant, when it is shown " that he fraudulently con-

tracted the debt or incurred the obligation respecting which the suit is brought." Who is to be said to have fraudulently contracted the debt or incurred the obligation? Obviously, the purchaser of the goods; not Ward L. Jennings alone. Both members of the firm incurred the obligation simultaneously, and both contracted the indebtedness.

Section 8015, in my judgment, has no application. That provides that,—

"When two or more persons are jointly indebted as joint obligors, partners, or otherwise, and *an affidavit shall be made,* as provided in section two of this chapter, so as to bring one or more of such joint debtors within its provisions, and amenable to the process of attachment, then the writ of attachment shall issue against the property and effects of such as are so brought within the provisions of said section."

This section gives no support for the suggestion that one partner may not, when representing the firm, fraudulently contract a firm indebtedness. Nor is the case of *Edwards v. Hughes,* 20 Mich. 290, relied upon by defendants, in point. In that case, it is true, it was said, construing the section just quoted:

"It will be seen from this section that when the plaintiff is able to make a case against one of several debtors, whether they are indebted as partners or otherwise, he is not to allege a joint wrong by them all, but must set forth his case in the affidavit according to the facts. There is good reason and plain justice in this statute, since otherwise the party who has the misfortune to be joined in the same legal obligation with a dishonest person may himself be subjected, not only as to his property owned jointly with the other, but as to his individual property also, to all the inconveniences and rigorous treatment to which he could have been made liable if personally guilty of the like dishonesty."

But the misfortune of the present defendant Ward H. Jennings does not arise from his having joined in the

legal obligation of Ward L. Jennings, a "dishonest person." His liability grows out of the fact that the *firm* of which he was a member fraudulently incurred an obligation. In *Edwards v. Hughes* the fraudulent act of the copartner consisted of transferring his individual property in fraud of the creditors of the firm. It is perfectly apparent that he could not, by an act thus disconnected from the business of the firm, subject the property of his copartners to the extraordinary process of attachment. But, in the case under consideration, the act of Ward L. Jennings was the act of the firm. Any other view of this statute results in this: that a partner having a nominal interest may incur indebtedness on behalf of the firm fraudulently, and no process can issue against either the copartnership property or the property of his copartners. The extent to which the creditor could go would be to issue his process against the interest of the nominal partner. This is plainly not the purpose of the statute, in my judgment.

I think the case falls within the principle in *May v. Newman,* and the order dissolving the attachment should be reversed, with costs.

McGRATH, C. J., concurred with MONTGOMERY, J.