BARRY'S TOWN AND SUBURBAN, INC., PLAINTIFF–RESPONDENT, v. RONALD L. COHEN, BENJAMIN COHEN AND COHEN AND COHEN, CERTIFIED PUBLIC ACCOUNTANTS, DEFENDANTS, AND MELVYN I. COHEN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 20, 1989—Decided November 14, 1989.

Before Judges GAULKIN, DREIER and SCALERA.

*Norman W. Albert* argued the cause for appellant (*Lampf, Lipkind, Prupis, Petigrow & LaBue,* attorneys; *Scott D. Jacobson,* of counsel).

*Martin J. Brenner* argued the cause for respondent (*Brenner & Brenner,* attorneys).

The opinion of the court was delivered by

GAULKIN, P.J.A.D.

Defendant Melvyn I. Cohen appeals by leave granted (*R.* 2:2–4) from an order continuing a previously-issued writ of attachment against his assets and a subsequent order denying his motion to modify that order.

## I.

The writ was initially authorized by order to show cause entered upon the filing of the verified complaint. The complaint, in eight counts, sought a variety of relief arising out of defendants' alleged "illegal and unlawful acts which defrauded the plaintiff." Its essential factual allegations were these:

4. The defendants Ronald L. Cohen, Melvyn I. Cohen and Benjamin Cohen are certified public accountants licensed to practice their profession in the State of New Jersey. Since at least 1978 until October 1986 the plaintiff employed Ronald L. Cohen, Melvyn I. Cohen and Benjamin Cohen, doing business as Cohen & Cohen as its certified public accountant. In or about October 1986 Ronald L. Cohen went into practice for himself and continued as plaintiff's accountant. . . .

5. In their capacity as the plaintiff's accountant the defendants were responsible for maintaining custody of plaintiff's checkbook and preparing all checks for the signature of the authorized signators of plaintiff and reconciling plaintiff's bank statement.

    \*      \*      \*      \*      \*      \*      \*      \*

8. On or about July 6, 1978 the defendants began a systematic scheme to unlawfully defraud plaintiff for defendants' own benefit. The plaintiff had agreed to compensate the defendants for the accounting services they rendered by paying them a certain sum each month. For the period July 1978 through December 1983 it was $450.00 per month, for the period January 1984 through December 1984 it was $475.00 per month. For the period January 1985 through June 1985 it was $500.00 per month and for the period July 1985 to date it was $550.00 per month.

9. For the period July 1978 to October 1986 the defendants, any or all of them would draw a check on the plaintiff's account made payable to Cohen & Cohen in the proper amount of the agreed monthly remuneration. The defendants, any or all of them, would fill in the Arabic numbers of the amount of the check but leave the line where the numbers were to be written blank and explain to Alvin Simon, the President of the plaintiff corporation that the check was being made out in this manner so that it could be taken back to the defendants' own office where defendants would emboss the amount of the check on the line that was to bear the handwritten figures with defendants' embossing machine. The plaintiff through its representative accepted this explanation and then signed the checks made payable to the defendant Cohen & Cohen with the proper Arabic numerals setting forth their monthly remuneration but the handwritten line left blank. For the period October 1986 to date the defendant Ronald L. Cohen followed the same procedure and made the check out to himself.

10. The defendants purposely left enough room where the Arabic numerals were so as to insert additional numerals to increase the amount of the check from the authorized amount.

11. The defendants would then write in the unauthorized amount of the check in handwritten words and deposit the check to their account.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

16. ... [P]laintiffs have already ascertained for the period July 1978 through December 1989 that over $784,000.00 in checks were improperly altered, cashed and deposited in this manner. For the period July 1978 through September 1986 when Ronald L. Cohen, Melvyn I. Cohen and Benjamin Cohen d/b/a Cohen & Cohen were plaintiff's accountants approximately $498,000.00 of the $784,-000.00 was embezzled from the plaintiff.

Based on those verified allegations, a Law Division judge entered an order to show cause, without notice to defendants, restraining them from transferring any assets "except to pay ordinary and necessary expenses" and ordering that writs issue for the attachment of assets "to the sum or value of $748,-000.00 with regard to the assets of Ronald L. Cohen and $498,000.00 with regard to the assets of Melvyn I. Cohen." Pursuant to that writ, the Essex County Sheriff attached Melvyn's interest in his Livingston home.

Melvyn moved to quash the writ and, when that motion was denied, to subordinate the attachment to a proposed home equity loan. In certifications submitted in support of those applications, Melvyn set forth that he and his brother Ronald were partners in the Cohen & Cohen firm from November 1977 to October 1985, that Ronald was "solely responsible for rendering services to the plaintiff" and that Melvyn "had no professional contact with the plaintiff." Melvyn further asserted that he "had absolutely no knowledge of the transactions referred to in the complaint" and that he did not "participate in, consent to, authorize or ratify any of the actions alleged to have occurred during the existence of the partnership of Cohen & Cohen." While he acknowledged that the checks produced by plaintiff were drawn to and endorsed in the name of Cohen & Cohen, he stated that none of the checks had been deposited in the sole bank account maintained by the partnership. Thus, he said, "the partnership did not consent to, authorize, participate in or profit by any of the alleged defalcations."

In his responding certifications, Alvin Simon, plaintiff's president, did not dispute Melvyn's assertions. Rather, he urged that while "the partnership and the other partners can look to the defalcating partner for relief," plaintiff was entitled to "look to the partners and the partnership for redress as is provided by law." [1]

The motion judge refused to either quash the writ or to permit Melvyn to subordinate it to his proposed home equity loan. Melvyn appeals.

## II.

*R.* 4:60–5(a) provides that a writ of attachment may issue

... [O]nly upon the court's finding ... that (1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment.

The sole statutory ground relied upon by plaintiff is that set forth in *N.J.S.A.* 2A:26–2a, which permits an attachment to issue "[w]here the facts would entitle plaintiff to an order of arrest before judgment in a civil action." Plaintiff asserts it is entitled to "an order of arrest before judgment" pursuant to *N.J.S.A.* 2A:15–42d, which permits a capias ad respondendum to issue "in an action founded upon contract, express or implied, due to plaintiff from defendant" when the proof establishes "[t]hat defendant fraudulently contracted the debt or incurred the demand."

The present record, however, does not support a finding that Melvyn "fraudulently contracted the debt or incurred the demand." The proofs certainly warrant a finding that plaintiff

---

[1] Our order granting leave to appeal permitted discovery and other proceedings to continue in the Law Division and authorized the parties to supplement their factual submissions prior to the argument date. No such submissions were made.

had been defrauded in a series of misappropriations by Ronald growing out of the contractual relationship for accounting services. *Cf. Allied Financial Corp. v. Steel Panel Sales Corp.*, 86 *N.J.Super.* 65, 74–78 (App.Div.1964). And we shall assume, without deciding, that the Cohen & Cohen partnership and each of its partners may be liable in damages for that misconduct. *See N.J.S.A.* 42:1–13; *N.J.S.A.* 42:1–14; *N.J.S.A.* 42:1–15; *Malanga v. Manufacturers Cas. Ins. Co.*, 28 *N.J.* 220 (1958). But the present record suggests only a vicarious liability on the part of Melvyn, who has asserted without contradiction that he did not know of, or participate in, or approve, or ratify or benefit from any of the fraudulent acts ostensibly done by Ronald in the name of the partnership. We find nothing in the language or policy of the statutes to permit a civil arrest of, and hence a writ of attachment against, a person who did not himself commit a fraud.

■ Attachment "is a statutory proceeding, not according to the course of the common law, which sanctions the *ex parte* taking of property *in invitum;* and on well-settled principles the statute is not to be enlarged beyond the plain meaning and understanding of its terms." *Russell v. Fred G. Pohl Co.*, 7 *N.J.* 32, 41 (1951). The civil arrest provisions subsumed in the attachment statute also must be strictly construed in light of our constitutional prohibition on imprisonment "in any action, or on any judgment founded upon contract, unless in cases of fraud...." *N.J.Const.* 1947, Art. I, par. 13; *see also Perlmutter v. DeRowe*, 58 *N.J.* 5, 11 (1971).

■ The language of *N.J.S.A.* 2A:15–42d describes the "defendant" against whom a capias ad respondendum may issue as the person who has "fraudulently contracted the debt or incurred the demand." That language does not provide for civil arrest of a person simply because he is liable in damages for the fraud of another. Civil arrest is authorized as extraordinary relief available against a wrongdoer. There is no sound reason or policy to construe the statutory language as permit-

ting arrest of a guiltless defendant whose misfortune it is to be liable as a matter of law for the fraud of another. Indeed, any contrary conclusion could well conflict with our constitutional provision permitting imprisonment in a contract action only in "cases of fraud."

*Hathaway v. Johnson,* 55 *N.Y.* 93 (1873), stated substantially that reasoning and result. The question there was whether a principal was subject to civil arrest in an action on a contract induced by fraudulent representations of his agent. The New York statute permitted arrest "where the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation upon which the action is brought." The Court of Appeals held that the principal was not subject to arrest under that statute:

> The obvious purpose of this provision was to introduce an exception to the general rule prevailing in this State, forbidding arrest and imprisonment for debt, and to permit this remedy in an action upon contract in the single case specified; and the test of the liability to arrest in such an action is the *guilt* of the defendant in contracting the debt or incurring the obligation sued upon. There must have been a fraudulent purpose in contracting the debt or incurring the liability on the part of the defendant whose arrest is sought. He must have been guilty of a fraud, and this implies personal misconduct, moral and actual, and not merely legal or constructive fraud, merely in respect to the transaction which is the subject of the suit.

55 *N.Y.* at 94–95 (emphasis in original).

Similarly, in *Worthley v. Goodbar,* 53 *Ark.* 1, 13 *S.W.* 216 (Sup.Ct.1890), where plaintiffs attached property of an innocent partner when the culpable partners had fraudulently removed and conveyed their property, the court held:

> Acts of one partner, therefore, in the conduct of a partnership business, which warrant the issuance of an attachment against his property, will not warrant the condemnation of the individual property of a partner who has not participated in such an act, if seized under a writ issued against all the members of the firm. The rule which holds an innocent partner responsible for the fraud of his copartner is only compensatory, and was devised to prevent a failure of justice. None of the penalties for fraud can be visited upon an innocent partner. His body cannot be taken upon process as for a debt contracted through fraud by himself; and no more can the provisional remedy by attachment, which is purely statutory, be enforced against his individual property,

when limited, as ours is, to the particular wrong-doer, unless some participation by him in the wrongful act is shown.

13 *S.W.* at 216–217. *See also Jaffray v. Jennings,* 101 *Mich.* 515, 60 *N.W.* 52 (1894); *Watson v. Hinchman,* 42 *Mich.* 27, 3 *N.W.* 236 (1879).

## III.

Since the record does not establish that Melvyn himself "fraudulently contracted the debt or incurred the demand" within the meaning of *N.J.S.A.* 2A:15–42d, the writ must be quashed. *R.* 4:60–5(a). For like reasons, we also vacate the restraint on Melvyn's transfer of assets: there is no present basis to quarantine Melvyn's assets to secure plaintiff prior to judgment. *Cf. R.* 4:60–19.

Those portions of the April 17 and the June 6, 1989 orders which continue the writ of attachment and the restraint against Melvyn are reversed. The matter is remanded to the Law Division for entry of an order dismissing the writ and vacating the restraint against Melvyn, and for all further proceedings.