Argued 12 January; decided 13 March, 1899.

## WATSON *v.* LOEWENBERG.

[56 Pac. 289.]

1. PLEADING — DENIAL OF AFFIDAVIT FOR ATTACHMENT.—A traverse of the acts alleged in an affidavit for attachment must deny every statutory ground alleged in as direct and explicit terms as if it were an answer to a complaint, and it must be tested by the same rules of pleading.

2. WHEN SECURITY WILL PREVENT ATTACHMENT.—The security referred to in Section 144, Hill's Ann. Laws, the possession of which will prevent the issuing of an attachment, must be conceded and unquestioned, and not a disputed or contingent security.

3. DISSOLVING ATTACHMENT — SUFFICIENCY OF AFFIDAVIT.—An attachment will not be set aside on the ground that the indebtedness sued upon is secured where the traversing affidavit does not allege or admit that fact, but states that plaintiff's assignor claims the right to hold certain property in its possession as collateral security for the indebtedness sued on, and contends that if that is true the attachment should be dismissed.

From Multnomah: THOS. A. STEPHENS, Judge.

This action was commenced on the thirty-first of January, 1895, by J. Frank Watson to recover from Julius Loewenberg upon four separate promissory notes, aggregating in amount about $16,000, made by defendant to the Merchants' National Bank, and by it assigned and transferred to the plaintiff for collection, who, at the time the action was commenced, caused a writ of attachment to be issued and certain personal property and various parcels of real estate attached as security for any judgment which the plaintiff might recover. On the twenty-first of February, 1895, the defendant moved to discharge the writ, on the ground that the affidavit upon which the same was obtained "was untrue and false." This motion was based on an affidavit of the defendant which, without denying any of the allegations of the affidavit for the writ, was to the effect that he was the owner of one hundred and fifteen shares of the capital stock of the Northwest Fire and Marine Insurance Company, ten of the Bank of Joseph, and five of the Polk County Bank, and that one S. Oppenheimer was the owner of seven hundred and forty-eight shares of the capital stock of the Northwest Foundry, which had been sold to him by affiant on the second of January, 1895. That at the time of such sale, the foundry and other stock referred to, was in possession of Messrs. Ladd & Bush, bankers, of Salem, Oregon, and that thereafter, and before the assignment to plaintiff of the notes mentioned in the complaint, all of such stock came into the possession of plaintiff's assignor, and plaintiff now claims the right to hold the same, on the ground that it was pledged by affiant to his assignor as security for the notes sued on; that while he never consented to the bank's possession of such property, and never pledged the same to it,

yet it retains possession thereof, and is claiming a lien thereon to secure the indebtedness mentioned in the complaint, together with other indebtedness.

On the twenty-eighth of February, 1895, McElroy, the cashier of the Merchants' National Bank, made a counter affidavit to the effect that he had knowledge of the various debts upon which the plaintiff's action is based, and that no security existed therefor in the hands of the plaintiff at the time of the transfer and assignment to him of such notes. He further states that the stock of the Bank of Joseph, and the Polk County Bank, mentioned in defendant's affidavit, is owned by the Merchants' National Bank, and the other stock referred to therein is pledged to and held by such bank as collateral security for debts and demands due it from the defendant, and is not held or pledged for any of the debts sued upon by the plaintiff. On the same date the plaintiff filed an affidavit, similar in effect to that of McElroy, in which he says : "I have not, nor have I ever had or claimed to have any lien, pledge, or security for the payment of any of the demands mentioned in the defendant's affidavit, except by virtue of the attachment in this action."

Before the motion for the discharge of the attachment was brought on for hearing, or disposed of in any way, the Merchants' National Bank commenced a suit in equity to foreclose the lien which it claimed on the stock in question, alleging that it had been pledged to it by defendant to secure certain indebtedness. A day or two thereafter Loewenberg filed an additional affidavit in the action brought against him by the plaintiff, in which he stated : "That none of the property mentioned in my affidavit in the above entitled cause was at any time pledged to the Merchants' National Bank, or any other firm or corporation, except Ladd & Bush ; that none of

said property is or was held by the said Merchants' National Bank, or any other person, firm, or corporation as security for said or any indebtedness; that the shares of stock of the Northwest Foundry Company were transferred to Sol Oppenheimer to secure him in the sum of about $15,000, which is due from me to him and Mr. Philip Goldsmith, of New York City, and said transfer was made in writing on the second day of January, 1895, and said stock was then transferred to him for said purpose, and he now holds the same; that at no time had I transferred or caused to be transferred said or any stock to the Merchants' National Bank as security, or otherwise." Upon the filing of this affidavit, the motion to discharge the attachment was necessarily abandoned. But the referee in the suit by the bank against the defendant to foreclose its alleged lien upon the stock referred to having subsequently made and filed findings of fact and conclusions of law therein to the effect that the stock in question was, prior to the assignment to the plaintiff of the notes upon which this action is based, pledged to the bank by the defendant as security for his indebtedness to it, including such notes, subject to a prior lien in favor of Oppenheimer for about $15,000, the defendant filed another motion to discharge the attachment, on the ground that the affidavit upon which the same was obtained is untrue and false, and "because the said bank claims to hold and has actual possession of personal property of the said defendant, which it claims to hold as collateral security for all of the indebtedness of the said defendant to the said bank and the said plaintiff."

In support of this second motion he filed an affidavit in which he denied that he was indebted to the plaintiff in any sum whatever, but alleged that he was indebted to the bank in the sum of about $5,000 upon the notes

sued on in this action, and denied that the same had not been secured by any mortgage, lien or pledge upon real or personal property. He then proceeds, however, to state that he and Oppenheimer are the owners of the property referred to in his previous affidavits, and that the bank has possession thereof, claiming a lien thereon as security for the indebtedness mentioned in the complaint, and that the plaintiff is but the representative of the bank and is prosecuting this action in its interest. He then sets out the proceedings in the suit brought against him by the bank, and the evidence of the plaintiff and McElroy, its cashier, given in such suit, and concludes by saying: "I desire to state that, if it is true, as testified to by Watson and McElroy, that I transferred the said stock to the said bank, as collateral, which fact was found by the referee to be true, then it was collateral for the full amount of my said indebtedness existing at said time, of which the indebtedness herein sued upon is a part. And that, for the reason that the collateral follows the indebtedness, and for the further reason that the said Watson really holds said notes for the benefit of the bank, therefore the said bank has security for its said indebtedness, and the said Watson has security for his said claim, and this attachment ought to be set aside and held for naught." A few days later, the plaintiff, Watson, filed a counter affidavit, giving in detail a statement of the contention of the bank and of himself, the testimony given on the hearing of the equity case, and the report of the referee made and filed therein.

It is unnecessary to set out more at length the contents of these several affidavits. They show that on or about the twenty-sixth of December, 1894, the defendant was indebted to the Merchants' National Bank in a large sum of money, and the bank opened negotiations with him looking to the securing of such indebtedness; that

on or about the seventh of January, 1895, in pursuance
of an agreement it thought it had with him, the bank
redeemed the stock referred to in the several affidavits
from Ladd & Bush, of Salem, to whom it had been
pledged by the defendant as security for about $2,000,
and in this manner obtained possession thereof; that
immediately thereafter the defendant denied its right to
the possession, or that he had ever made an agreement
that the stock might be held as collateral security for
his indebtedness to the bank, and claimed that, pending
his negotiations with the bank in relation to the matter,
he had transferred the foundry stock to Oppenheimer to
secure an indebtedness of $15,000 due to him. A few
days later, and after the defendant had denied the right
of the bank to hold such stock as collateral security, the
bank transferred the notes upon which this action is
based to the plaintiff, its president, for collection, and
he thereupon brought this action, alleging in his affidavit
for the attachment that the payment of such indebted-
ness "has not been secured by any mortgage, lien or
pledge upon real or personal property." The motion
for the discharge of the attachment was allowed, and
subsequently a judgment was rendered in favor of the
plaintiff for the amount prayed for in the complaint,
and he appeals, assigning as error the sustaining of such
motion.

REVERSED.

For appellant there was an oral argument by *Mr. Wil-
liam T. Muir*, with a brief over the name of *Whalley &
Muir*, to this effect:

We claim that the bank did not have any security,
within the meaning of the attachment law, for its right
to the collateral stocks was disputed by both Loewenberg

and his friend Oppenheimer. The word "secured" must mean an admitted security—not one that is denied. No claim of a pledge which must be established in a suit, and against the opposition of the supposed pledgor, is a "security."

The indebtedness of Loewenberg was in the form of five notes, and an overdraft. Four of these notes were transferred to plaintiff by indorsement, for value, without recourse, and he executed an agreement to pay to the bank the entire amount collected, less expenses, with this special clause : "I do hereby declare  *  *  *  that I accept said notes with the express understanding that I acquire no interest by said transfer in any pledge or collateral security whatever." Now, it is evident that plaintiff had no security, unless he is to be charged with it because his assignor had control of these stocks at the time the notes were indorsed, and in spite of the fact that he never had possession or control of them. It is contended that the bank had security, therefore the assignee of these notes had, under the rule that security is an accessory and follows the principal. This rule is designed to preserve the integrity and facilitate the transfer of negotiable instruments ; it never was intended to impair the value of commercial paper, or affect its free negotiability. It does not become a part of the contract of pledge between the pledgor and pledgee. The complete ownership of collateral, so far as it is necessary to protect full payment of the principal debt, is in the pledgee ; but the complete ownership of the principal obligation is in the payee.

The contract of pledge does not alter the contract embodied in the principal note. As between the original parties (we do not speak of third persons with equities) the principal note may be transferred with or without the pledge. In neither instance can the pledgor

complain. If the note is transferred with the security, so that the transferee receives title to both, no harm is done. The original contract of pledge contemplated this. If the transfer is made without the security, the pledgor is benefited, and the person receiving the naked note cannot complain if he agreed to so receive the note freed from the collateral. No difficulty can arise out of this branch of the case if it is remembered that the rule, the security follows the principal, arises out of the law of negotiable instruments, and not out of the contract of pledge. The depositor of collateral as security for a debt can complain of a misuse, but not of a nonuse of the paper. The rule that the note or debt is the principal and the security an accessory has never been and cannot be invoked by the original parties to a transaction. It can only be applied when a third person seeks to enforce a secured obligation which has been transferred to him without a formal assignment of or delivery of possession of the collateral, or, in some instances, when a third person claims the benefit of a security he has never received, but which by reason of his ownership of the debt he was entitled to receive.

Let us suppose that the bank owned five separate promissory notes executed by the defendant, and was in undisputed possession of this stock as collateral security for all the indebtedness. The plaintiff, at the time of receiving an assignment of the four notes now owned by him, knew of the existence of this collateral. He accepted them without recourse, and upon the express agreement that he was not to share or have any interest in the collateral. Each of these notes constituted a separate and distinct contract, governed by the law of negotiable instruments. The contract of pledge was separate and distinct. The bank sold and plaintiff bought four of these notes, without the security. Evidently, neither

plaintiff nor the bank can complain, and Loewenberg cannot object, for his collaterals are now held for about half the debt for which he deposited them. The contract of pledge was that the bank might dispose of the stock, retain the full amount of its debt, and return the surplus; more than that he could not insist upon. The claim of the defendant cannot be supported by legal reasoning. We believe it would be difficult to find any authority holding that the laws permitting an attachment, in anywise restricted the full negotiability of promissory notes.

The transfer from the bank to Watson was absolute, and passed the entire legal ownership and equitable interest. The remedy of the bank was thereafter against Watson on his obligation to it: *Sloan* v. *Woodward,* 25 Or. 223.

A person holding collateral security for the payment of a debt may waive the security and attach: *Libby* v. *Cushman,* 29 Me. 429; *Buck* v. *Ingersoll,* 52 Mass. 226.

On proceedings to dissolve an attachment the traverse of the averments of the plaintiff's affidavit must be explicit, direct, and complete, in like manner as an answer to a complaint in an ordinary action, and must be tested by the same rules of pleading: 1 Wade, Attach. §§ 276-279; *Hansen* v. *Doherty,* 1 Wash. St. 461; *Godbe-Pitts Drug Co.* v. *Allen,* 8 Utah, 117; *Dolan* v. *Armstrong,* 35 Neb. 339; *Jenkins* v. *Richardson,* 71 Fed. 365.

For respondent there was an oral argument by *Mr. Lewis B. Cox,* with a brief over the name of *Cox, Cotton, Teal & Minor,* to this effect:

Taking the case presented by the appellant in its most favorable view for him, we find by reference to the printed abstract the fact to be clearly established that on the seventh day of January, 1895, the Merchants'

National Bank, which then held the notes in suit, had as collateral for them and other indebtedness owing by the respondent securities worth to the bank at least $5,000 ; and the two questions raised by this appeal are as to whether or not this security inhibited the appellant from taking out a writ of attachment, and whether or not the legality of the issuance of the writ can be challenged upon motion and affidavit. We present our argument in inverse order.

This case is not ruled by that of *Bank* v. *Mullaney*, 29 Or. 268. The facts involved in that case were that the attachment had been issued upon papers which were regular in form, upon a demand which was undeniably attachable, and where there was no objection urged as to any of the proceedings connected with the application for or issuance of the writ. The motion made to discharge the attachment was interposed by the defendant, and the sole ground suggested by him was that in the execution of the writ the officer had levied upon property which belonged to another than himself. The court correctly determined that this sort of an application would not lie, and a very sufficient reason may have been that adequate provision was made elsewhere in our statutes for the relief of the owner of the property, while the defendant in the suit had not been injured by the execution of the writ, and consequently had no grievance to prefer. In line with this decision are the cases of *Langdon* v. *Conklin*, 10 Ohio St. 439 ; *Mitchell* v. *Skinner*, 17 Kan. 563. The citation made by the court to Drake on Attachment should have been taken with qualifications, because a consideration of the subject then under the view of the author will show that he was treating of attachments irregularly issued. This is not a case of that character. Here the writ was improvidently issued, which is a very different thing, amounting, as it does,

to an abuse of the process of the court, which may be brought before the court by motion and affidavit, and which the court will always correct by examining into the matters alleged to constitute the abuse, in case the charge is substantiated.

A motion to dissolve supported by affidavits, bringing in matters *dehors* the record, will lie against a writ of attachment improvidently issued :   Drake, Attach. (6 ed.), §§ 397-400 ; 1 Wade, Attach. (1 ed.), § 276 ; Waples, Attach. (1 ed.), p. 426 ; *Elliott* v. *Jackson*, 3 Wis. [649], 571 ; *Orton* v. *Noonan*, 27 Wis. 572 ; *Morgan* v. *Avery*, 7 Barb. 656 ; *Kinsey* v. *Wallace*, 36 Cal. 462 ; *Beaudry* v. *Vache*, 45 Cal. 3 ; *Gessner* v. *Palmateer*, 89 Cal. 89 ; *Fisk* v. *French*, 114 Cal. 400 ; *Lambden* v. *Bowie*, 2 Md. 334 ; *Gover* v. *Barnes*, 15 Md. 576 ; *Branson* v. *Shinn*, 13 N. J. L. 250 ; *Phillipsburg Bank* v. *Lackawanna Ry. Co.*, 27 N. J. L. 206 ; *Boyes* v. *Coppinger*, 2 Yeates, 276 ; *Jordan* v. *Hazard*, 10 Ala. 221.

The notes in suit had been secured by a pledge of stocks, and the affidavit for attachment was false in fact, as the affidavits of Watson and McElroy show.

The bank and appellant could make no deal between themselves for the waiver of the securities so as to clear the way for an attachment without respondent's assent : *Largey* v. *Chapman*, 18 Mont. 563 (46 Pac. 808).

The appellant attempts to justify his action on the score that when the bank transferred to him the notes it reserved the collateral to apply upon other demands, and consequently that the notes in suit were not secured to him.   This, however, is not in accord with the statute, or the principles of law applicable to pledges.   The debt was secured in whosoever hands it rested ; and the question as to whether or not the holder of the debt, as between himself and his assignor, had security to which he might look, is not germane to the matter under con-

sideration. The deal between appellant and the bank was of course nothing more nor less than a mere juggle, resorted to in the interest of the bank to give it by indirection a right which it could not exercise directly. Appellant was president of the bank, took a straw assignment, instituted his action in the interest of the bank, and the bank is to get the fruits of his proceeding—apples of Sodom, however, as they will prove to be. The proposition therefore is, in reality, whether or not the Merchants' National Bank, having taken collateral for its entire indebtedness, could disassociate the collateral from its connection with any part of the indebtedness, and waiving its lien as to that indebtedness secure a new and additional lien by an attachment, while it still held the collateral to cover the balance of the debt. We do not think the court will hesitate to say that this could not be done. Certainly the bank could not clear itself of the inhibition against an attachment raised by its holding this security in any other way than by divesting itself of the collateral, and this could be accomplished only by returning it to the respondent, and his accepting it ; nor could an assignee get any better right : *Largey* v. *Chapman* (Mont.), 46 Pac. 808.

In states having statutes like ours, the policy of the law is to require the attaching creditor to have first exhausted his security, provided it had not been rendered worthless by the act of him who deposited it : 1 Wade, Attach. § 19.

MR. JUSTICE BEAN, after making the foregoing statement of the facts, delivered the opinion of the court.

1. It appears from this statement of the case that the defendant sought to have the attachment discharged by a traverse of the facts alleged in plaintiff's affidavit.

In such case the rule is well settled that, whatever the method of procedure may be, the traversing affidavit or plea must deny every statutory ground alleged in the procuring affidavit in as direct and explicit terms as if it were an answer to a complaint, and must be tested by the same rules of pleading. "The denial of the grounds of attachment, as alleged in the affidavit," says Mr. Wade, "should be positive, clear, and explicit. Whatever be the technical mode of procedure, whether by plea in abatement, as at common law, or by a statutory pleading in the nature of a plea in abatement, as in the State of Missouri, the paper filed in the case must possess the essential features of good pleading under the Code. Where the mode was by plea in abatement, it was held that the plea would be held bad on demurrer where two distinct grounds were alleged. In this the rule of pleading at common law is followed, as such pleas are held demurrable for duplicity when two distinct matters, each of which is sufficient, are pleaded at the same time, either in abatement or in bar. But the plea in abatement in attachment suits is open to a more serious objection, where it fails to deny distinctly the allegations of the affidavit. As we have seen, a denial of some of the allegations in the allegation practically leaves those undenied for the purpose of the traverse, as though they were confessed. It will, therefore, be fatal to the plea where one of the grounds is not traversed, or even where what may be regarded as one of two phases of the same fact is passed over, without denial, though the other phase is put in issue :" 1 Wade, Attach. § 279. See, also, 3 Enc. Pl. & Prac. 78 ; *Hornick Drug Co.* v. *Lane*, 1 S. D. 129 (45 N. W. 329); *Hansen* v. *Doherty*, 1 Wash. St. 461 (25 Pac. 297); *Keith* v. *Stetter*, 25 Kan. 100 ; *McFarland* v. *Claypool*, 128 Ill. 397 (21 N. E. 587); *Bane* v. *Keyes*, 115 Mich. 244 (73 N. W. 230). Now,

tested by these rules, it seems clear that the traversing affidavits of the defendant are insufficient. He does not, at any time, deny the allegations of the affidavit for the writ, or allege that the indebtedness sued upon is secured. He bases his motion entirely upon the ground that the plaintiff's assignor claims that it had the right to hold certain property in its possession as collateral security for such indebtedness; and, while he does not admit the validity of such claim, his contention is that, if it is true, the attachment should be discharged. This, we think, is not a sufficient showing to justify the court in allowing the motion.

2. The statute authorizes a writ of attachment in an action on contract for the direct payment of money, and which is not secured by mortgage, lien, or pledge upon real or personal property, or, if so secured, when such security has been rendered nugatory by the act of the defendant: Hill's Ann. Laws, § 144. By this statute the creditor holding such a security is denied the right to' the summary process of attachment; but it must be an admitted security, and not one the validity of which is denied by the defendant, and which can only be enforced, if at all, at the end of a lawsuit: Porter v. Brooks, 35 Cal. 199.

3. If the defendant in this case had admitted the claim of the bank, his motion would probably have been well taken, but this he did not do. In the first affidavit filed by him he simply shows that the bank has possession of certain property, which it claims to hold as security for the indebtedness sued on, but does not admit the validity of such claim. In the second affidavit he expressly swears that the stock never was pledged to the bank, and that it never had any lien or claim thereon whatever. It was not until after the suit brought by the bank against him had been tried out, and the find-

ings of the referee made to the effect that the bank's contention was in part true, that he ever conceded, even in a qualified way, that his indebtedness to the bank was secured; and his statement then was that, if the testimony of the witnesses in behalf of the bank, or the findings of the referee in the equity suit are true, and that the bank did in fact have the right to hold such stock as collateral security, then, and in that event, the indebtedness sued upon was secured, and the attachment ought to be discharged; although he does not admit the claim or contention of the bank. Under these circumstances, we think the showing made by him was insufficient to authorize the discharge of the attachment, and that the court erred in sustaining such motion. The judgment of the court below is therefore reversed, and the cause remanded, with directions to overrule the motion to discharge the attachment, and for such further proceedings as may be proper in the matter.

REVERSED.

Decided 19 July, 1899.