Argued May 6, decided July 27, 1909.

## BOWMAN v. WADE.

[103 Pac. 72.]

FRAUDS, STATUTE OF—CONTRACT TO PAY MONEY—PART PERFORMANCE.

1. Where a defendant borrowed money from plaintiff under an agreement that the amount should stand as a loan for three years at ten per cent, and that the amount should be secured by a mortgage on real estate, such agreement, having been completely performed by plaintiff, was not within the statute of frauds as a contract not to be performed within a year.

FRAUDS, STATUTE OF—CONTRACTS IMPLIED—LOANS—UNENFORCEABLE CONTRACT.

2. Where plaintiff loaned money to defendant to be repaid with interest at ten per cent in three years, plaintiff was entitled to recover the sum loaned with legal interest in assumpsit for money received, though the contract was unenforceable under the statute of frauds.

ATTACHMENT—VACATION—TRAVERSE.

3. A party seeking to discharge an attachment by a traverse of the facts alleged, must deny every statutory ground alleged in the procuring affidavit in as direct and explicit terms as if it were an answer to a complaint.

EVIDENCE—SANITY—OPINION—REASON.

4. An opinion as to the sanity of the grantor by a subscribing witness to a mortgage was without weight, where it was limited to the witness' observation at the time of the taking the acknowledgment, and the witness did not give any reason for his opinion, as required by Section 718 B. & C. Comp.

INSANE PERSONS—VALIDITY OF MORTGAGE.

5. A mortgage by a grantor *non compos mentis*, without consideration, was void and not merely voidable.

ATTACHMENT—"SECURED CLAIM"—MORTGAGE BY NON COMPOS MENTIS.

6. Where plaintiff's debt was secured by the mortgage of a person *non compos mentis*, it was not a "secured claim" within the statute authorizing attachment (Section 296, B. & C. Comp.), providing for attachment in an action on a contract, express or implied, for the payment of money not secured by mortgage, loan, or pledge on real or personal property, or, if so secured, when such has been rendered nugatory by the act of the defendant.

INSANE PERSON—MORTGAGE—DISAFFIRMANCE—DUTY OF GUARDIAN.

7. The guardian of an insane person has no discretion to ratify a mortgage given by his ward, but is bound at his peril to disaffirm and avoid it.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE SLATER.

Plaintiff, O. P. Bowman, brought this action on April 13, 1908, against Henry Wade, to recover money loaned to defendant, alleging, substantially: That in January, 1903, he loaned him the sum of $300; that, when the same became due in April following, defendant solicited an additional loan of $700; that on April 18th of that year

plaintiff loaned him the further sum of $700 upon an agreement that the whole amount of $1,000 should stand as a loan for three years from that date and should bear 10 per cent interest; that no part thereof, principal or interest, had been repaid; that at the time of making the additional loan defendant agreed to secure the payment of the entire amount by a mortgage upon real estate of ample value, and pursuant thereto he caused his son, William N. Wade, to execute and deliver to plaintiff a promissory note of that date for the amount of the loan, due in three years, with 10 per cent interest, and a mortgage on the southeast quarter and lots 11, 12, 19, and 20 of section 7, township 1 south, range 33 east, Willamette Meridian, in Umatilla County, containing 320 acres of land, to secure the note; that, at the time of procuring the loan and causing the note and mortgage to be executed and delivered as a pretended security and as an inducement therefor, defendant represented to plaintiff that he was possessed of the equitable title to such property, but that he had caused the legal title to be vested in his son, William N. Wade, to be held for the use and benefit of defendant, and at all times subject to be transferred, conveyed, or incumbered, as defendant might direct, and that he owned said property, had a good title thereto, and the right to cause the same to be conveyed or incumbered by his son; that said representations were false and fraudulent; that neither did defendant nor his son then, or at any time since, have any title or any right to incumber or convey the same; that, at the time of making the note and mortgage, William N. Wade was, and is now, an imbecile to such an extent as to be incompetent to take or hold the title to the lands described in the mortgage as trustee for the defendant, and was wholly incompetent and mentally incapable of transacting any business or of legally executing the note and mortgage; that he has no property out of which the amount of the note could be collected; that the note and

mortgage never were of any value, and never have been any security whatsoever for the payment of the loan made to the defendant; that these facts were fully known to, but concealed by defendant from plaintiff for the purpose of wronging and defrauding him, and procuring the loan without security, and preventing plaintiff from obtaining security by attachment; that plaintiff relied upon defendant's representations, and was thereby induced to make the loan, but by reason of the alleged facts the note and mortgage are a nullity, and plaintiff's claim is wholly unsecured. A formal tender of the note and mortgage, accompanied by an offer to cancel the mortgage of record, is made. After the commencement of the action, a writ of attachment was issued at the instance of plaintiff, and levied upon defendant's property, who thereafter, on April 28th, moved that the attachment be dissolved upon the alleged ground that the debt sued upon was secured by the collateral note and mortgage. Upon the same day, and before such motion was determined, plaintiff filed an amended affidavit in the support of his writ of attachment, as provided by Section 311, B. & C. Comp. The motion was denied on July 7th, whereupon defendant answered, denying the material averments of the complaint, except the giving of the note and mortgage as collateral security. Trial was had, resulting in a verdict and judgment for plaintiff for the sum of $1,000 and interest at 6 per cent, and an order to sell the attached property, from which defendant appealed.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Douglas W. Bailey* and *Mr. J. B. Perry,* with an oral argument by *Mr. Bailey.*

For respondent there was a brief over the names of *Messrs. Raley, Richards & Raley,* with oral arguments by *Mr. James H. Raley* and *Mr. N. C. Richards.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. The first assignment of error relied upon by defendant for a reversal of the judgment is based upon the admission, over his objection and exception, of the parol testimony of the plaintiff of the circumstances of the making of the loan and defendant's agreement to repay the money three years after the date of the transaction. The substance of the objection is that the contract upon which the action is founded is one which was not by its terms to be performed within one year from the making thereof, and is within subdivision 1, Section 797, B. & C. Comp., commonly designated as the "statute of frauds." It appears from the testimony that no note or memorandum of the contract, expressing consideration, was made in writing subscribed by the defendant, and if the agreement is within the statute, as claimed by the defendant, it could not be established by parol testimony in an action to recover on such contract.

There is much disagreement among the authorities as to whether or not a complete performance of an agreement upon one side at the time of its making, the performance of which by the other party is not to take place within a year, will take the case out of the statute. It is said that the adjudicated cases are incapable of reconciliation on principle, but that the decided preponderance of authority is in favor of the validity of a parol contract which has been fully performed upon one side at or near the time of its making, although the execution thereof by the other party is deferred for a longer period than one year: Smith, Law of Fraud, § 352. And especially is this the case where the stipulation sought to be enforced related solely to the payment of a money consideration. In such cases it is a mere point of form in bringing the action; the plaintiff's right to recover on the *indebitatus assumpsit* being clear: Browne, Statute of Frauds (5 ed.), § 290; *Pierce* v. *Paine's Estate*, 28 Vt. 34; *Emery* v. *Smith*, 46 N. H. 151; *Durfee* v. *O'Brien*, 16

R. I. 213 (14 Atl. 857). A full citation and review of
the authorities on both sides of this controverted question
may be found in an extended footnote to section 352 on
pages 436-447 of Mr. Smith's recent work on the Law
of Fraud. After a careful perusal thereof, we are of
the opinion that on principle and weight of authority the
contract now under consideration is not within the stat-
ute. We are brought to this conclusion chiefly by what
was said in *McClellan* v. *Sanford,* 26 Wis. 595. After
stating the principle there involved—which is substan-
tially the same as here—and the attitude of the authori-
ties thereon, Mr. Chief Justice DIXON says: "It will be
observed, on examining these cases, that in some the
question was nearly identical with the present, except
that the promise was not evidenced by anything written
in the deed, and that in all it was held that a verbal
promise to pay beyond the year, if made upon an exe-
cuted consideration, whether lands conveyed or goods
and chattels sold and delivered, or other consideration of
value, is valid. The doctrine of these cases is that the
provision of the statute now being considered applies
only to contracts not to be performed on either side within
the year. * * The cases holding to the opposite rule that,
whilst they adhere to a strict and literal construction of
the statute in order to close the door to the mischiefs
which they suppose the statute was designed to prevent
by excluding parol evidence after the lapse of one year,
they yet seem to leave the door wide open to the same
mischiefs by allowing parol evidence to be introduced to
show what the contract was, and what was the price or
sum agreed to be paid, for the purpose of enabling the
promisee or creditor to recover upon a *quantum meruit*
or *quantum valebat.* The advantage of this course of
decision is not perceived, and, if it were, we should not
be inclined to depart from a rule already laid down,
especially when it is sustained by so much and such
respectable authority." Substantially the same principle

is stated in *Durfee* v. *O'Brien,* 16 R. I. 213 (14 Atl. 857), that "If the recovery be upon a *quantum meruit* count, still the contract is admissible as evidence to show what the defendant admitted and declared the consideration to be worth."

2. It is conceded by counsel for defendant that, if plaintiff in fact loaned the money to defendant upon the terms stated in the complaint—which we must assume that the jury found—and that if it were held to be within the statute, yet he may recover, not upon the contract, but for money had and received, if the complaint be so framed; and this is undoubtedly held by many authorities, including *Keller* v. *Bley,* 15 Or. 433 (15 Pac. 705); *Pierce* v. *Paine's Estate,* 28 Vt. 34; *Swift* v. *Swift,* 46 Cal. 266; *Moody* v. *Smith,* 70 N. Y. 598; *Whipple* v. *Parker,* 29 Mich. 369; *Bennett* v. *Phelps,* 12 Minn. 326 (Gil. 216). The complaint states the fact of plaintiff's having paid the money to the defendant, and the purpose for which it was done, which negatives that the payment was made to liquidate any liability or obligation which the former owed to the latter, or that it was intended as a gift. Under such circumstances the law imposes an obligation to repay the same within a reasonable time, with legal interest. The verdict and judgment are for such an amount, and not for the amount of interest contracted to be paid. In our opinion the evidence was admissible, and in any view of the case there was no prejudicial error in admitting it.

The motion for a directed verdict involves the same theory of the defense, and it was therefore properly denied.

3. The remaining question for consideration is the refusal of the court to discharge the attachment. It was secured upon the plaintiff's affidavit, which states, in effect, that the debt claimed to be due had not been, and at the commencement of the action was not, secured by any mortgage, lien, or pledge upon real or personal prop-

erty. The facts with reference to the giving by William
N. Wade, at the instance of defendant, of the note and
mortgage as a pretended security for the debt, are set
forth; but it is averred that the same were fraudulent
and void at the time they were given, for the reasons
that neither the defendant nor his son had any title, legal
or equitable, to the premises attempted to be mortgaged,
and that the son was at the time mentally incapable of
contracting. The reasons assigned in the motion of the
defendant for the dissolution of the attachment, with
one exception, are mere generalities, such as: That the
affidavit filed herein does not comply with the statute
(but in what respect is not pointed out) ; that it appears
from the amended complaint that plaintiff is not entitled
to the writ; and that the action is not such a one as would
entitle plaintiff to an attachment. But it is therein
alleged that it appears from the amended complaint that
plaintiff has a mortgage to secure the debt sued upon,
and that the same is now existent. In support of the
motion, the affidavits of William N. Wade and Joe H.
Parks are filed. By the former it is attempted to be
shown: That affiant is, and has been for several years,
the owner of the mortgaged property; that he executed
and delivered the note and mortgage mentioned in the
complaint and delivered the same to plaintiff for the pur-
pose of securing the payment of the money therein men-
tioned, and caused said mortgage to be recorded; that at
no time has he sought to rescind or avoid the mortgage,
or repudiate the contract thereby created; that he does
not intend to rescind or repudiate it; and that he has
paid taxes upon the mortgaged land since he owned it,
which is evidenced by four tax receipts appended as
exhibits. The affidavit of Parks is to the effect that he
is a notary, and that he took Wade's acknowledgment of
the execution of the mortgage, concluding with this state-
ment: "That the said William N. Wade, at the time he

54 OR.— 12

acknowledged said instrument, appeared to be, and so far as I could observe was, in possession of all his faculties, and well able and capable of executing contracts."

When a party seeks to have an attachment discharged by a traverse of the facts alleged in plaintiff's affidavit, it is well settled that the traversing affidavit or plea must deny every statutory ground alleged in the procuring affidavit in as direct and explicit terms as if it were an answer to a complaint, and must be tested by the same rules: *Watson* v. *Loewenberg,* 34 Or. 323 (56 Pac. 289). The plaintiff's position, as set forth in his affidavit, is that the contract upon which he sues, whether express or implied, is for the direct payment of money, and that it is not secured by a mortgage, although it is confessed that a note and mortgage in form upon real property were given as collateral security; but it is averred that the giving of this note and mortgage, and procuring him to accept them, was a fraud, that neither the defendant nor his son had any title to the land or interest therein that could be mortgaged, and that the son, who executed the note and mortgage, was at that time, and is now, a mental imbecile to such an extent that he was and is incompetent to contract. None of these averments are attempted to be met and refuted expressly by the defendant, except the one asserting the lack of title, and this only by the affidavit of the alleged incompetent, William N. Wade, who therein claims to own the land in his own right, without limitation as to the *quantum* of his interest. If any evidentiary value at all can be given to this affidavit, it can go no further than to prove that whatever interest he had in the land he held in his own right, and not as trustee for his father; but we are of the opinion that, because of Wade's lack of mentality, which is conclusively established, this affidavit should be given little or no weight.

4. Apparently the affidavit of Parks was offered as some sort of proof of the mental soundness of William

N. Wade; but, at the utmost, this goes only to the general
appearance of the latter at the time that he acknowledged
the mortgage.   The opinion expressed by the affiant is
limited by the words, "so far as I could observe."   His
opportunity for observing was evidently limited to the
time occupied in executing and acknowledging the instru-
ment.   Wade executed the note and mortgage by making
his mark, although he was then a young man beyond his
majority.   Parks was an attesting witness.   The statute
(Section 718, B. & C. Comp.) provides that upon a trial
evidence may be given of "the opinion of a subscribing
witness to a writing, the validity of which is in dispute,
respecting the mental sanity of the signer, and the opin-
ion of an intimate acquaintance respecting the mental
sanity of a person, the reason for the opinion being
given."   Parks did not claim in his affidavit that he had
any acquaintance with Wade, and his only qualification
as witness to Wade's sanity is that he was a subscribing
witness to the execution of the mortgage; but, if what he
has said on the subject can be construed to be an opinion
as to the mental soundness of Wade, he has failed to
give any substantial reason for such opinion.

5. Opposed to this affidavit is that of the plaintiff, cor-
roborated by the affidavits of three citizens, each of whom
have sworn that he has known William N. Wade from
five to nine years, and two of whom lived neighbors to
him; that he was generally known as "crazy" Wade;
that during that time he has been an imbecile and incap-
able of transacting business or of carrying on an intelli-
gent conversation; that he does not appear to be as bright
as an ordinary child five years old; that seven or eight
years before he was committed to the insane asylum, but
returned in a short time, and since his return he has been
no better than before.   One of these affiants says he has
seen young Wade frequently, and attempted to converse
with him, but that he was totally unable to carry on an
intelligent conversation, or to understand the nature of

a contract, or to negotiate or conduct business of any kind or character; that he was unable to look after and care for himself, and would wander away from home, when it would be necessary for some one to come after him, or some one to take him home. Under this state of facts, it cannot be held otherwise than that William N. Wade was at the date of the execution of the note and mortgage, and ever since then has been, an imbecile to such an extent that he was and is wholly incompetent to comprehend or transact ordinary business or to make a binding contract. Indeed, that conclusion does not appear to be controverted by the defendant.

Now, if William N. Wade ever had any title or interest in this land sufficient to be mortgaged, the record shows he held it in his own right, and not as trustee. It appears to have been purchased at private sale from the United States government as a part of the Umatilla Reservation under Act Cong. March 3, 1885, c. 319 (23 Stat. 340), and Act. Cong. July 1, 1902, c. 1380 (32 Stat. 730), the southeast quarter by Charles Sevey, a brother-in-law, and lots 11, 12, 19, and 20, by Rose Carroll, a sister of William. This is shown by the duplicate receipts under date of March 12, 1903, and the second and third payments. On April 4, 1903, a few days before the execution of the note and mortgage in question, each of these purchasers, for the expressed consideration of $500, conveyed the land to William N. Wade by bargain and sale deeds, with a warranty against incumbrances and to defend the same against the lawful claims and demands of all persons. From the affidavit of F. C. Bramwell, acting register of the United States Land Office at La Grande, it appears that Sevey's entry, as the result of a contest, was held for cancellation April 8, 1908, and Rose Carroll's entry was finally canceled and the land resold March 3, 1907, to Frederick Shoemaker. There is no proof that William N. Wade took any other title than that disclosed by these deeds. It is true that plaintiff

has testified that Henry Wade, the defendant, told him
that he in fact owned the land, and that his son held it
in trust for him; but this is not evidence of the fact.  It
merely concedes that at the inception of the transaction
a claim of that character was made by the defendant; but
the tenor of the deeds by means of which William
obtained whatever title he possessed disproves the claim;
but, as we view the law, it cannot be material in this
case how he held it.

In *Farley* v. *Parker,* 6 Or. 105 (25 Am. Rep. 504), this
court has held that the deed of a person *non compos
mentis* is void.   This conclusion is supported by a respec-
table line of authority, including the cases of *Dexter* v.
*Hall,* 15 Wall. (U. S.) 20 (21 L. Ed. 73), and *Van Deusen*
v. *Sweet,* 51 N. Y. 378.   There are many cases, however,
which treat the deeds and contracts of infants and per-
sons *non compos mentis* as merely voidable, and not as
absolutely void: *Key's Lessee* v. *Davis,* 1 Md. 32; *Burn-
ham* v. *Kidwell,* 113 Ill. 425; *Evans* v. *Horan,* 52 Md. 602;
*Allis* v. *Billings,* 6 Metc. (Mass.) 419 (39 Am. Dec. 744) ;
*Riggan v. Green,* 80 N. C. 236 (30 Am. Rep. 77).   But
conveyances without consideration have been held abso-
lutely void: *Clerk* v. *Clerk,* 2 Vern. 412; *Elliot* v. *Ince,*
7 De G., M. & G. 475; *Roddy* v. *Williams,* 3 Jones & L. 1.
But even though this contract be considered as merely
voidable, and not void, still it could be avoided at the
election of the incompetent if he should recover, or by
his guardian if one should be appointed, or by his legal
representative, or his heirs.   It is only contracts based
upon an adequate consideration of which the incompe-
tent has had the benefit, and made by the other contract-
ing party in good faith, without fraud or undue influence,
and without knowledge of the insanity, or reason to sus-
pect it, that will be upheld against the incompetent: 16
Am. & Eng. Enc. Law (2 ed.) 625.   And this contract is
not of that character.

6. Can the plaintiff's claim be said to be secured by a note and mortgage burdened with such infirmities? The policy of the law is that a creditor holding a security by way of "mortgage, lien, or pledge, upon real or personal property," shall not resort to the summary process of attachment until he has exhausted his security; but such lien or pledge must be of a fixed, determinate character, capable of being enforced with certainty and depending on no conditions: *Porter* v. *Brooks,* 35 Cal. 199; *Watson* v. *Loewenberg,* 34 Or. 329, 336 (56 Pac. 289).

7. If the plaintiff should undertake to enforce this security in any manner, he could do so only after the appointment of a guardian for William N. Wade by some competent court, and it would not be within the discretion of such guardian to ratify and affirm the validity of this security as against his ward; but he would be bound at his peril to disaffirm and avoid it.

Under these circumstances, it cannot be said that plaintiff had security for his debt, and there was no error in refusing to discharge the attachment.

The judgment is affirmed.           Affirmed.

Mr. Justice King delivered the following dissenting opinion:

I am unable to concur with that part of the opinion holding that, under the circumstances presented by the record, an attachment will lie. I regard it as a well-established rule that, unless the statute expressly provides for a liberal construction, all enactments relative to attachments must be strictly construed, and may not be extended by implication or interpretation. Our statute makes no provision for an exception to this rule, with reference to which Mr. Justice Strahan, in *Case* v. *Noyes,* 16 Or. 329, 333 (19 Pac. 104, 106), referring to provisions of the code upon the question, remarks: "The court has no power to enlarge or extend them beyond the letter of the statute." Similar enactments were under

consideration by the Supreme Court of New Jersey in *Van Emburgh* v. *Pullinger,* 16 N. J. Law 457, concerning which the court say: "The proceeding by attachment is altogether a statutory remedy, and, if it fails to reach the case of an insolvent debtor, we cannot extend it to him by construction." The Supreme Court of Michigan, having the same question under consideration, observes: "As said at the outset, attachment is a harsh and extraordinary remedy. The law may well restrict its use. * * It is common knowledge that few men or firms can survive an attack by attachment. It is the almost certain precursor of insolvency, as in former days it was of bankruptcy, and we should hesitate before broadening the scope of the act in question": *Jaffrey* v. *Jennings,* 101 Mich. 515, 522 (60 N. W. 52, 54: 25 L. R. A. 645). The Court of Appeals of New York, in *Penoyar* v. *Kelsey,* 150 N. Y. 77, 80 (44 N. E. 788, 789: 34 L. R. A. 248), in announcing the law relative to attachments in that state, gives its conclusion thus: "Owing to the statutory origin and harsh nature of this remedy, the section in question should be construed, in accordance with the general rule applicable to statutes in derogation of the common law, strictly in favor of those against whom it may be employed." For a collation of the authorities of many states, including Oregon, holding to the above effect, see 4 Cyc. 400, 401.

The conditions under which an attachment may be made a lien upon the property of the debtor are clearly circumscribed in Sections 296, 297, B. & C. Comp, the enumeration of which provisions with reference thereto, under all rules of statutory construction, excludes all others not there specified. Plaintiff has not brought himself within any of the requirements indicated in those sections. The note and mortgage securing it accepted by him as security for the loan are regular in form, and properly executed, and the record does not disclose that they have been "rendered nugatory by the act of the

defendant." If not invalid when executed, no act of the defendant or of any other person since the execution of the instruments has rendered them ineffective, at least so far as appears from the record. The instruments held by plaintiff as collateral security for the debt sued upon are *prima facie* what they purport to be, and I do not believe it comes within either the letter or spirit of the statute to permit an attaching creditor in a collateral proceeding to have it determined that instruments of this character, regular upon their face, properly executed, and under seal, are null and void—either to the extent of holding that the mortgagor was an imbecile at the time of the execution of the mortgage and note, or to adjudge him not to be the owner of the property mortgaged.

Unless it appears that the mortgagor at the time of the execution of the instruments was adjudged insane, or otherwise incompetent, and was at that time under such disability, then I think, under the most favorable view to plaintiff, the instruments executed by him are voidable only, and are in full force and effect until annulled in some direct proceeding instituted in the proper forum and by the proper party for that purpose: *Coburn* v. *Raymond,* 76 Conn. 484 (57 Atl. 116: 100 Am. St. Rep. 1000) ; *Eaton* v. *Eaton,* 37 N. J. Law, 108 (18 Am. Rep. 716) ; *Blinn* v. *Schwarz,* 177 N. Y. 252 (69 N. E. 542: 101 Am. St. Rep. 806) ; *French L. Co.* v. *Theriault,* 107 Wis. 627 (83 N. W. 927 : 51 L. R. A. 910: 81 Am. St. Rep. 856) ; *Riggan* v. *Green,* 80 N. C. 236 (30 Am. Rep. 77) ; *Carrier* v. *Sears,* 4 Allen (Mass.) 336 (81 Am. Dec. 707) ; *Ashcraft* v. *De Armond,* 44 Iowa 229; *Swartwood* v. *Chance,* 131 Iowa 714 (109 N. W. 297).

True, it is disclosed that Wade was at one time adjudged insane and committed to an asylum; but it also appears that he was subsequently discharged, thereby overcoming any presumption against him by reason of such commitment, and, until otherwise declared

by some direct proceeding instituted for that purpose, he must be presumed to have been competent, or sane, when the instruments, here collaterally attacked, were executed.

So far as appears from the record, no steps have been taken to annul the instruments held as collateral; nor does it appear that the alleged imbecile, or any one appearing in his behalf by and proceeding, directly, indirectly, or otherwise, in any manner disputes their sufficiency, or that the title to the land mortgaged is in any way brought in question, except by the method here under consideration.

Being of the opinion that the trial court was in error in not dissolving the attachment, I dissent from the conclusion announced by the majority on this point.