Argued at Pendleton October 26, affirmed December 22, 1925.

## MARY E. GRAHAM ET AL. *v.* MARY E. ALLEN ET AL.

### (241 Pac. 1007.)

**Insane Persons—Deed of Insane Person is Void.**

1. Deed of an insane person is void, notwithstanding Section 9844, Or. L.

**Descent and Distribution—Lack of Consideration not Grounds for Avoidance of Deed by Grantor's Heirs.**

2. In a suit by heirs of grantor to set aside deeds, lack of consideration for deeds is not material, as neither a grantor nor his heirs can impeach a voluntary conveyance.

**Deeds—Mental Capacity of Grantor Established Under Evidence.**

3. In action by heirs of grantor to set aside his conveyances to sons, evidence *held* to show sufficient "mental capacity" to convey land.

Deeds, 18 C. J., p. 162, n. 45, p. 218, n. 59, p. 219, n. 60, p. 443, n. 19, p. 445, n. 34.

From Wallowa: J. U. CAMPBELL, Judge.

3. See 14 R. C. L. 590.

In Banc.

On August 13, 1921, C. J. Allen, a resident of Wallowa, Wallowa County, Oregon, was the owner of valuable real and personal property situate in that county and state. Joseph W. Allen, Jesse C. Allen and Earl B. Allen, sons, resided in that county. Of the four daughters of C. J. Allen and Mary E. Allen, his wife, Ada Alice Hunter resided in Alberta, Canada, Orpha E. Carlson resided at Waitsburg, Washington, Mary E. Graham, at Elgin, Oregon, and Flora I. Childers was living with her parents.

On the above date C. J. Allen executed his will, and, at the same time and place, he and his wife, Mary E. Allen, executed and delivered two deeds to real property owned by C. J. Allen. In and by the first, they conveyed to their son Joseph W. Allen a certain tract of land, and took from him and his wife a mortgage thereon, providing for payment of $500 a year to C. J. Allen and Mary E. Allen during their lifetime, and a like payment to the survivor as long as he or she should live. By the second deed, they conveyed to Jesse C. Allen another tract of land, and took from him and his wife a mortgage thereon, providing for payment of $500 a year to the grantors during their lifetime, and a like payment to the survivor until his or her death. In addition to the lands of C. J. Allen conveyed to Jesse C. Allen, forty acres of land owned by Mary E. Allen were on that date conveyed to him.

On January 14, 1923, C. J. Allen died, leaving as his heirs at law his widow and the children hereinbefore named. Thereafter this suit was instituted by five of his children against Mary E. Allen, widow, and Joseph W. Allen and Jesse C. Allen, sons, for the

purpose of having the hereinabove described deeds declared null and void. After describing the land involved herein, the complaint avers, among other things:

"That on the thirteenth day of August, 1921, the defendants, acting and conspiring together, procured the said C. J. Allen to execute and deliver to said defendant Jesse C. Allen a deed to said tract No. 1, and to execute to said J. W. Allen a deed to said tract No. 2, and to execute a purported will devising all of the remainder of his property to said defendant Mary E. Allen."

The plaintiffs aver that in and by the execution of the deeds they were disinherited, for the reason that by the proposed will they were bequeathed but the sum of $5 each. They aver the incapacity of C. J. Allen to make a deed "owing to disease and old age—being then about sixty-five years of age—of unsoundness of mind, and weak, debilitated and deranged to such an extent as to be wholly incapable of transacting business, and easily influenced." They aver:

"He (grantor) was suffering with diseases known as 'Arterio Sclerosis' and cardiac trouble, and about nine months prior to the execution of said deeds decedent had suffered a paralytic stroke, all of which had weakened his mind and body."

They further aver that, by reason of the physical distress and mental weakness of C. J. Allen, the defendants acquired and exercised a controlling influence over his mind and will, and, in the exercise of such influence, took an unfair advantage of his enfeebled condition and dictated and directed what he should do in matters pertaining to his real and personal property; that the documents above referred

to were made without consideration, and that they were the acts and deeds of the defendants and not of the deceased.

The defendants joined issue, and, after hearing the evidence and the argument of counsel, the trial court made its findings of fact and conclusions of law. Among the findings of fact are the following: That, on August 13, 1921, and prior and subsequent thereto, C. J. Allen "was of sound mind, and was not under, nor acting under, duress, restraint, fraud, menace nor undue influence"; that, on August 13, 1921, for the purpose of securing to C. J. Allen and Mary E. Allen, and to the survivor of them, the payment of $500 per annum, which payment constituted the consideration for the execution of the deed to Jesse C. Allen, Jesse C. Allen and Daisy J. Allen, his wife, made and delivered to C. J. Allen and Mary E. Allen a mortgage upon the land conveyed by that deed; that the deed made and delivered to Joseph W. Allen was made upon like terms, and for a like consideration, and was the free and voluntary act of a competent grantor.

The court ordered that the suit be dismissed without costs. From that judgment plaintiffs appeal.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Green & Hess,* with an oral argument by *Mr. Raymond J. Green.*

For respondents there was a brief and oral argument by *Mr. A. S. Cooley.*

BROWN, J.—1. "Conveyances of land * * may be made by deed, signed by the person from whom the

estate or interest is intended to pass, being of lawful age, * * and acknowledged or proved, and recorded as directed in this chapter. * * "  Or. L., § 9844.

However, this court has held that the deed of an insane person is void: *Farley* v. *Parker,* 6 Or. 105; *Bowman* v. *Wade,* 54 Or. 347 (103 Pac. 72).

2. The plaintiffs aver in their complaint and assert in their brief that the deeds involved herein were made without consideration. The plaintiffs are heirs, not creditors. As to them, a purely voluntary conveyance from the father to his sons would have been valid. It is well settled in this state that, as against these parties, their heirs, or those who represent their rights only, the question of consideration is not material, for neither a grantor nor his heirs can impeach a voluntary conveyance. That principle is announced in *Carnagie* v. *Diven,* 31 Or. 366 (49 Pac. 891), where this court, speaking through Mr. Chief Justice MOORE, said:

"Every person of lawful age who is seized of real property in this state may dispose of his interest therein agreeably to his wishes, and, in the exercise of this right, may make a voluntary conveyance thereof binding upon the parties thereto: *Bradtfeldt* v. *Cooke,* 27 Or. 194 (40 Pac. 1, 50 Am. St. Rep. 701)."

To like effect, see 8 R. C. L., p. 961.

3. More than a year after the execution of the deeds, Mrs. Hunter, a daughter residing in Canada, came to Wallowa and took up with her father the matter of his action in the execution of the deeds involved in this suit. She said to him: "Why did you deed the boys this land?" And he replied, "Because I wanted them to have it and they deserved it." The daughter then said, "You are not getting two per

cent on your money." Her father answered, "I am getting all I asked for. I didn't ask for any more."

According to the testimony of Mrs. Allen, other similar conversations were had between the grantor and his daughters, Mrs. Hunter and Mrs. Graham, and it is plain that he never wavered in his purpose to convey the lands to his sons.

An analysis of the record discloses that Mr. Allen recognized the fact that a will is an ambulatory instrument, and that he might revoke his will and make another whenever he chose. He gave his sons Jess and Joe all he intended that they should have. He realized that he was suffering from a diseased heart, and other afflictions as well, and that he might live a brief time only, or for years. He had formed an estimation of the business ability of the five plaintiffs. He was not yet ready to vest in these heirs title to any of his property. He was of the belief that they had failed to demonstrate their ability to care for the property and he seemed to think that it might be dissipated if turned over to them at that time. For that reason he intended to defer his gifts to the plaintiffs to a later date. Mrs. Allen testified:

"He said the reason he willed it that way was because he wasn't ready to fix it up and he didn't know whether he would live to finish it, and he left it that way so I could fix it up afterwards. He left it in my power so I could fix it up in place of him.

"Q. Fix it up with reference to what or to whom?

"A. Why, with the other five. He said he had given Joe and Jess what he intended to give them; and the rest of it he said he would leave it to my judgment to give it where I seen fit to the other five. * * He said if I * * seen they deserved it he said I need not wait until I die; that I could fix it up before I died, and then if I had anything left after

I died, *it could be divided up amongst the other five."*

An unnatural disposition of property may be considered as a circumstance with other facts in determining the validity of a devise of property. But, clearly, from this record, it was not the intention of the grantor to cut from under the feet of plaintiffs all ·claims to his bounty. He had three farms and three sons. The record clearly shows that he intended these farms for his sons but that he failed to deed the third farm to Earl because he believed Earl was unsuccessful as a farmer. The following excerpt from the testimony of Ernest F. Johnson, an old-time friend of the grantor, is thoroughly illustrative of what was in the grantor's mind, as shown by other similar statements:

"He wanted to dispose of his property amongst his children while he was able to do it; * * he mentioned that he had thought about deeding to some of his children land and giving some of them money, and * * he wanted * * to be sure his wife was protected."

He later carried out this plan by deeding tracts Nos. 1 and 2 to Jesse C. Allen and Joseph W. Allen, providing for himself and wife by taking back mortgages on the lands deeded, whereby each grantee was obligated to pay to himself and wife during their lifetime, and to the survivor, $500 per annum. He delayed in carrying out his plan of making provision for Earl and the daughters because he had not determined how he wished to divide the remainder of his property among them, nor whether they would preserve his bounty if they acquired immediate possession. For this reason, he willed the remainder of the property to his wife, giving her power to convey

to any one of the five heirs last above mentioned during her lifetime, and directing that, at her death, any portion then remaining should descend to the five plaintiffs, share and share alike. The will also gives the beneficiary a general power to convey and devise. No doubt Mr. Allen believed that such a power might be beneficial to the estate he was leaving.

The measure of mental capacity that a grantor shall possess before he can validly convey his real property by deed has many times been set down by this court. See *Carnagie* v. *Diven,* 31 Or. 366 (49 Pac. 891); *Swank* v. *Swank,* 37 Or. 439 (61 Pac. 846); *Dean* v. *Dean,* 42 Or. 290 (70 Pac. 1039); *Hamilton* v. *Holmes,* 48 Or. 453 (87 Pac. 154); *Reeder* v. *Reeder,* 50 Or. 204 (91 Pac. 1075); *Wade* v. *Northup,* 70 Or. 569 (140 Pac. 451); *Magness* v. *Ditmars,* 81 Or. 598 (160 Pac. 527); *Rowe* v. *Freeman,* 89 Or. 428 (172 Pac. 508, 174 Pac. 727).

A consideration of the facts in this case convinces us that the grantor's mental capacity measures up to the true rule established by the foregoing precedents. From these facts and circumstances it satisfactorily appears that the grantor, when making the deeds conveying his lands, understood fully the nature of the business in which he was engaged. He comprehended the extent and nature of his estate. He had in mind all of those who by relation might have been the objects of his bounty. He recollected the names and various residences of his children. He knew the description of the lands he intended to convey and did convey. He remembered the consideration and the terms of payment thereof. From all these concurring circumstances, shedding their light upon the mentality of the grantor, we conclude that C. J. Allen, on August 13, 1921, possessed suffi-

cient mental capacity to execute the deeds involved herein. He was neither insane nor a victim of undue influence. The various steps resulting in the execution of the deeds were free and voluntary upon his part. The testimony shows that Allen was not easily influenced. He possessed a mind of his own. Although consulting with his wife, he carried out his own plan with reference to devising these farms. Unnatural and unjust as it may seem, the grantor desired and determined that his farms should descend to his sons who knew how to farm and who actually did farm.

The testimony in this case is largely a repetition of the testimony in a companion case brought to this court, wherein the five plaintiffs herein contest the validity of the will of C. J. Allen, the defendants herein defending the will. For a more comprehensive statement of the facts involved, see that case decided this day.

The decree is affirmed, without costs to either party in this court.                    AFFIRMED.